## LIEBES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6814.

Circuit Court of Appeals, Ninth Circuit.

March 6, 1933.

Leon E. Morris, Edward M. Jaffa, and Morris, Jaffa & Sumski, all of San Francisco, Cal., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Wm. Cutler Thompson, and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Frank T. Horner, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

SAWTELLE, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals, in which it was held that there was a deficiency of $4,373.50 in the federal estate tax on the estate of Isaac Liebes, deceased.

Liebes died on May 29, 1920. The petitioner, as executrix of his estate, filed an estate tax return therefor on May 29, 1921. The amount of the tax originally assessed was $13,692.81, and this amount was paid. On March 13, 1925, the respondent assessed a deficiency of $9,907.99, and on the following day notified the petitioner to that effect; the notice being contained in a deficiency letter. In that letter the respondent stated that "an immediate jeopardy assessment would be made." On February 15, 1926, the petitioner executed a bond in which appeared the statement that she was about to file with the respondent her claim in abatement for the deficiency tax of $9,907.99.

The record does not disclose the actual date of the filing of the claim in abatement, but such claim was rejected wholly on June 7, 1927, and the petitioner was so notified. In the same letter of June 7, 1927, the peti-

tioner was also informed that there was an additional deficiency of $4,141.34, which later was raised by the board, at the request of the respondent, to $4,373.50. It is this latter amount that is the subject of the present controversy. On July 26, 1927, the petitioner asked for a redetermination of the deficiency, in a petition filed before the Board of Tax Appeals, and on November 25, 1927, she filed an amended petition. On October 15, 1930, the Board decided that there existed the deficiency referred to above.

At the hearing before the Board of Tax Appeals, by stipulation the following three issues were submitted to the board for decision:

(a) The taxability of the community interest of the decedent's widow, Helena Liebes, in the estate of the decedent; said interest being one-half of the decedent's gross estate.

(b) The taxability of the insurance policies totaling $196,979.34, being the proceeds of insurance policies in excess of $40,000, mentioned in the 60-day letter from the Commissioner of Internal Revenue, dated June 7, 1927.

(c) Whether or not the assessment of any deficiency in tax in excess of the total tax heretofore assessed of $23,600.80 is barred by the statutes of limitations.

The Board decided the foregoing issues as follows:

(a) The community interest of decedent's widow is subject to a federal estate tax.

(b) One life insurance policy of $50,000 is not subject to a federal estate tax, and the balance of $146,979.34 of the proceeds of the policies is subject to such tax.

(c) The assessment of a deficiency in excess of the total tax is not barred by the statute of limitations.

The petitioner concedes that the community property question has been finally determined by the Supreme Court adversely to her contention; hence issue (a) is not urged on the petition for review. See United States v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 70 L. Ed. 285.

■ Of the two remaining issues, we will first consider the one dealing with the statute of limitations.

As pointed out by the petitioner, an assessment made in this proceeding after the effective date of the Revenue Act of 1924— June 2, 1924—would have to be within the period limited by section 1009 of that act. Section 1009 provides, in part (26 USCA § 105 and note), as follows: "(a) Except as

provided in sections 277, 278, 310, and 311, and subdivisions (b) and (c) of this section, all internal-revenue taxes shall, notwithstanding the provisions of section 3182 of the Revised Statutes or any other provision of law, be assessed within four years after such taxes became due, and no proceeding in court for the collection of such taxes shall be begun after the expiration of five years after such taxes became due."

Since section 305 of the same act (26 US CA § 1097) provides that the tax "shall be due and payable one year after the decedent's death," in the instant case, under ordinary circumstances, no assessment could have been made after May 29, 1925, and "no proceeding in Court" for the collection of the tax could have been begun after May 29, 1926. Accordingly, the petitioner contends that "the assessment and collection of this additional deficiency of $4373.50 is barred by the" statute of limitations.

The respondent, on the other hand, answers that the right of review by the Board of an assertion of liability by the respondent "exists only upon the conditions which the law attaches to its exercise, and when the petitioner appealed to the board she did so in the light of section 308. (e) of the Revenue Act of 1926." Section 308 (e), 26 USCA § 1102a, reads as follows: "The board shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the executor, and to determine whether any additional amount or addition to the tax should be assessed, if claim therefor is asserted by the commissioner at or before the hearing or a rehearing."

Accordingly, the respondent argues that when the petitioner contested the Commissioner's determination of the extent of her liability, by the same token the petitioner, under the above section, decided to hazard the finding of an obligation larger than that theretofore asserted, even though, in the absence of such appeal, the government, by reason of the statute of limitations, might not have been able to enforce payment.

We believe that this contention is sound. As the respondent points out, "the petitioner did not open the door to herself alone." The language of section 308 (e) is definite and sweeping. The Board is given "jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the executor."

There is only one condition laid down by the statute, to the exercise of this jurisdiction to redetermine an amount greater than that asked for in the original deficiency notice. That condition is that the jurisdiction to make such redetermination can be exercised "if claim therefor is asserted by the commissioner at or before the hearing or a rehearing."

In the instant case this condition was met by the respondent, for he sent the deficiency letter to the petitioner on June 7, 1927, and the appeal to the Board was filed on July 26, 1927.

■ It is not within the province of the courts to add new provisos to the statute. As was said by Mr. Justice Brewer in the case of United States v. Goldenberg, 168 U. S. 95, 103, 18 S. Ct. 34, 42 L. Ed. 394: "No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute. In the case at bar the omission to make specific provision for the time of payment does not offend the moral sense."

Here, as in the Goldenberg Case, supra, the "omission," if any there were, "to make specific provision" for claims by the Commissioner when they are barred by the statute of limitations, "does not offend the moral sense." See, also, Crooks v. Harrelson, 282 U. S. 55, 60, 51 S. Ct. 49, 75 L. Ed. 156.

■ Furthermore, the rights of the government are never foreclosed, except by statutory language clearly indicative of such purpose. In United States v. Nashville, etc., R'y Co., 118 U. S. 120, 125, 6 S. Ct. 1006, 1008, 30 L. Ed. 81, the court said: "It is settled beyond doubt or controversy, upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided, that the United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations unless congress has clearly manifested its intention that they should be so bound. [Many cases cited.]"

In the instant case we believe that Congress has failed "clearly to manifest" that the statute of limitations shall bar the government from collecting its revenue, in proceedings before the Board of Tax Appeals, whenever the Commissioner shall have made "claim therefor * * * at or before the hearing or a rehearing."

On the contrary, if there is room for any inference, we believe that the inference lies the other way; namely, that Congress intended that the Board should have the power to redetermine the correct amount of the tax, even if claim therefor was made by the Commissioner after the statute had run, but before the hearing or a rehearing.

■ We next address ourselves to the question of whether or not the insurance policies, totaling $146,979.34, were properly included by the Board as part of the decedent's taxable estate.

Nine insurance policies originally were involved in this case. In the Commissioner's prior audit these policies, totaling $196,989.31, all payable to beneficiaries other than the estate, were included as part of the taxable estate. (There is no point made of the discrepancy of $9.97 in the figure of the prior audit as compared with that first asserted before the Board.) In the deficiency letter of June 7, 1927, however, the Commissioner announced that an adjustment was made by excluding the policies from the taxable estate.

The first of these policies, dated January 1, 1896, issued by the Mutual Life Insurance Company of New York, for $50,000, originally payable to the executors, administrators, or assigns, contained no provision respecting revocation or change of beneficiary, but by mutual consent, indorsed on the policy under date of January 31, 1908, the policy was changed to make the decedent's wife, her executors, administrators, or assigns, the beneficiaries. The policy later, on January 15, 1917, was assigned to Leon Liebes, a son. The Board of Tax Appeals held that the proceeds of that policy should not be included in the gross estate. The respondent concedes that "this point is not here in issue, since the Commissioner has not appealed."

The four policies in the second group, each for $25,000, were in the Equitable Life Assurance Society. Each was dated October 10, 1912. Each expressly reserved the right of revocation and the power to change the beneficiary. Such a change was made on January 17, 1917. This power to revoke and change rested solely in the insured, and was in no way dependent upon the consent of the beneficiary.

The four policies in the third group, each for $25,000, were in the Mutual Life Insurance Company of New York. In the body of each policy was the provision that it was issued "without right to the insured to change the beneficiary." Each of these policies, however, bears on the face the following stamped

indorsement: "The beneficiary is changed to (beneficiary named). The right to revoke this designation of beneficiary is reserved to the insured." Under date of January 15, 1917, by the above form of indorsement, the beneficiary was changed from Helena Liebes, the original beneficiary, to a son, Leon Liebes, as to two policies, and to a daughter, Lina Liebes Lederman, as to the other two. The policy as now before this court bears on its face the power of revocation in the insured, and such power continued from January 15, 1917, to the date of decedent's death. Each of the four policies in this group is dated February 8, 1915.

The reason that prompted the Commissioner to deduct the amount of the insurance policies—which was included in the original assessment—in his letter of deficiency of June 7, 1927, presumably is that the Commissioner felt bound by the case of Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934, upon which the petitioner herein strongly relies. In that case Mr. Justice Holmes held that policies issued prior to the passage of the Revenue Act of 1918 (40 Stat. 1057) were not subject to a federal estate tax.

After the Frick Case came the decision of Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388. In that decision the only reference to the Frick Case is to be found on page 333 of 278 U. S., 49 S. Ct. 126, 127, where, after stating the questions certified, the court observed: "Similar questions were mooted by counsel, but not decided, in Lewellyn v. Frick."

It is somewhat significant that the court seemed to pass over the Frick Case and to rely upon other cases; especially Saltonstall v. Saltonstall, 276 U. S. 260, 271, 48 S. Ct. 225, 72 L. Ed. 565. See, also, Coolidge v. Long, 282 U. S. 582, 598–599, 51 S. Ct. 306, 309, 75 L. Ed. 562, in which the Saltonstall Case is cited with approval, as furnishing "a good illustration of incomplete succession;" and Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397.

In the Chase National Bank Case, supra, the Court, at pages 336–337 of 278 U. S., 49 S. Ct. 126, 128, said: "But we think that the rule applied in Saltonstall v. Saltonstall, supra, to a succession tax is equally applicable to a transfer tax where, as here, the power of disposition is reserved exclusively to the transferor for his own benefit. Such an outstanding power residing exclusively in a donor to recall a gift after it is made is a limitation on the gift which makes it incomplete as to the donor as well as to the donee, and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers."

In the case of Burnet v. Guggenheim, 53 S. Ct. 369, 370, 77 L. Ed. ——, decided by the Supreme Court on February 6, 1933, the cases of Chase National Bank, supra, and Saltonstall v. Saltonstall, supra, are cited with apparent approval on the propositions that "Taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid"; and that "There has been a steady widening of the concept of a transfer for the purpose of taxation under the provisions of part 1 [of title 3 of the Revenue Act of 1924, 26 USCA § 1091 and note et seq.]," which deals with the estate tax. In the Guggenheim Case, the court decided that deeds of trust made in 1917, with a reservation to the grantor of a power of revocation, became taxable as gifts under the Revenue Act of 1924, when, in 1925, there was a change of the deeds by a cancellation of the power.

In Heiner v. Grandin (C. C. A. 3) 44 F. (2d) 141, 143, there were involved two insurance policies, and the question was whether or not, having been issued in 1894 and 1906, before the passage of the Revenue Act, they were taxable, under the principle laid down in Lewellyn v. Frick, supra. The court solved the problem in the following language: "In the two policies in question, although issued before the act was passed, the insured reserved the right to change the beneficiary, and so the transfers did not take place until Mr. Grandin's death. Accordingly they constituted a part of his gross estate and were taxable."

See the same case, on second appeal (C. C. A.), 56 F.(2d) 1082, certiorari denied, 286 U. S. 561, 52 S. Ct. 643, 76 L. Ed. 1294.

Both on reason and authority, we believe that the eight insurance policies in which the decedent reserved the power of revocation were part of his taxable estate at the time of his death.

Accordingly, the decision of the Board of Tax Appeals is affirmed.

Decision affirmed.