### SCOTT et al. v. COMMISSIONER OF INTERNAL REVENUE.

, No. 9646.

Circuit Court of Appeals, Eighth Circuit.

Feb. 16, 1934.

Lydia Lee, of St. Louis, Mo. (Sam B. Jeffries, Arthur E. Simpson, and Paul F. Plummer, all of St. Louis, Mo., on the brief), for petitioners.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

This is an appeal from the Board of Tax Appeals sustaining the Commissioner in including three items in calculating the estate tax on the estate of Philip A. McDermott, a resident of Missouri who died in 1925.

One of the three items, which the taxpayer claimed as a proper deduction from the gross estate, was the full amount of commissions paid to the executors. In accordance with the law of Missouri (R. S. 1929, § 221 [Mo. St. Ann. § 221, p. 142]), such commissions are allowed upon a percentage basis of moneys disbursed by the executors. Part of the moneys here disbursed arose from sales of real estate belonging to the estate. Under the law of Missouri real estate belonging to the estate of a deceased is not liable for administration expenses, and therefore is not subject to the federal inheritance tax (Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156), but the state statute (section 221) expressly allows commissions to executors "on

money arising from the sale of real estate" disbursed by them. The issue here is as to deduction (by the taxpayers) of commissions based on disbursements by the executors of proceeds from sale of real estate belonging to the estate. The position of the Commissioner (sustained by the Board) is that: "Since, under the law, the value of the Missouri real estate, not subject to administration expenses, may not be included in the decedent's gross estate, it follows that any charges or expenses incurred in selling such real estate may not be classified as expenses of administration or as claims against the estate; also, since they did not otherwise accrue during decedent's lifetime or as a part of the administration of the estate, they may not be deducted from the gross estate for estate-tax purposes."

Petitioners contend the deduction is proper under section 303 (a) (1) of the Revenue Act of 1924, 26 USCA § 1095 note.

Section 302 of the above act, 26 USCA § 1094 note, defines "gross estate" for the purposes of the tax. Paragraph (a) thereof includes within such gross estate all property of the decedent "subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate." Real estate in Missouri is subject to payment of the debts of the estate after exhaustion of personal property, and is subject to distribution as part of the estate, but it is not subject to "the expenses of its administration." Because not subject to expenses of administration under the Missouri law, the Supreme Court in the Harrelson Case, supra, held such real estate was no part of the taxable "gross estate" under the Revenue Act of 1918 (40 Stat. 1057), which is the same in this respect as section 302 of the act of 1924.

Section 303 of the act of 1924 defines the taxable "net estate" by setting forth the allowable deductions from the above gross estate. Paragraph (a) (1) thereof sets forth as one of such deductions "administration expenses." Obviously, commissions allowable and paid to executors under the laws of the state of administration are administration expenses within the meaning of section 303 (a) (1).

The Commissioner contended, and the Board determined, that commissions allowed and paid to the executors for disbursements of proceeds from sales of real estate belonging to the estate were not deductible under section 303 (a) (1) as "administration expenses," because the real estate was not, under the Missouri law, subject to administra-

tion expenses, and therefore not liable to the federal tax. Section 303 (a) (1) contains no such qualification. Here no ambiguity exists either in section 303 (a) (1) which expressly leaves the meaning of "administration expenses" to the state law nor in the state law which expressly allows commissions on disbursements "on money arising from the sale of real estate" belonging to the estate by the executors. Nor is there room to conclude that to allow such deduction where the real estate is not subject to the tax leads to an absurd result. Although not subject to the federal tax, real estate comes within the sphere of the administration proceeding in Missouri (R. S. 1929, art. 6 [§ 130 et seq.], Mo. St. Ann. art. 6, § 130 et seq., p. 80 et seq.), requires care, management, and responsibility from the executors, and even may be sold by them (under order of the probate court) for various reasons (among which are payment of the debts of decedent if the personalty prove insufficient therefor). It is for all services rendered in the management and disposition of the entire estate that the executors are compensated, and this compensation can be none other than an administration expense. The state statute measures this compensation by a percentage of disbursements of all moneys by the executors, and includes therein, expressly, disbursements of moneys "arising from the sale of real estate." R. S. 1929, § 221 (Mo. St. Ann. § 221, p. 142). Such commissions are deductible.

■ The second item in issue here is the inclusion in the gross estate of the dower interest of the widow. This administration was under a will which disposed of the real estate. Under the statutes of Missouri (R. S. 1929, § 318 [Mo. St. Ann. § 318, p. 202]), the wife has a dower interest of one-third with power to assign such (section 320 [Mo. St. Ann. § 320, p. 207]). Also the widow is bound by a will disposing of the real estate (in part to her) without reservation of her dower unless she renounce the will within twelve months after proof thereof (sections 332 and 333 [Mo. St. Ann. §§ 332, 333, pp. 219, 221]). Here, she took under the will without renunciation thereof, so that she actually received no dower interest.

Section 302 of the Revenue Act of 1924 (26 USCA § 1094 note) in defining what shall constitute gross estate for purposes of the tax, includes "(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower."

Petitioners present two contentions. The first is that section 302 (b) should be con-

strued to exclude dower where the real estate to which it attaches is not part of the taxable estate. The argument is that Congress, in this enactment, did not foresee exclusion of any real estate from the taxable estate (as later determined in the Harrelson Case, supra), and, desiring to make sure that dower interests therein should not escape taxation (because some courts had determined dower was not subject to administration expenses and such expenses were one of the requirements of the section for inclusion in taxable gross estate), specifically provided, as above, for inclusion of dower; that, this being the purpose of Congress, it could not have been its intention to include dower unless the real estate to which it attached was part of the taxable gross estate. It is possible that the reason for specifically naming dower as included in the gross estate was as argued by petitioners, but this furnishes no warrant for this court to annul the dower provision of the section where Congress has expressly provided that it should be included irrespective of liability for administration expenses either of dower or of the real estate to which it attaches. Crooks v. Harrelson, 282 U. S. 55, 61, 51 S. Ct. 49, 75 L. Ed. 156; U. S. v. Waite, 33 F.(2d) 567, 573, this court.

The second contention as to dower is that section 302 (b), 26 USCA § 1094 note, requires that the dower interest be "existing at the time of the decedent's death," and that the dower interest here had no existence at the time of this decedent's death, because the will speaks as of the time of death, and operated to prevent dower ever attaching, and the widow thereafter did not renounce the will and take dower. There is no doubt that during twelve months following the death the widow had complete control over the situation as to her dower and entire right to nullify the provisions of the will which might replace the dower interest. R. S. Mo. 1929, § 333 (Mo. St. Ann. § 333, p. 221). Such status is within section 302 (b) as held in this and other courts. Crooks v. Loose, 36 F.(2d) 571, this court; U. S. v. Dietz, 33 F.(2d) 576, this court; Allen v. Henggeler, 32 F.(2d) 69, 71, this court; Schuette v. Bowers, 40 F.(2d) 208, 213 (C. C. A. 2).

■ The third item involved in this petition has to do with the inclusion of certain life insurance in the taxable gross estate. Over $80,000 of life insurance carried by decedent was received by the beneficiaries (other than the estate) of the policies. All of these beneficiaries were named as such in the policies before the Revenue Act of 1918 (40 Stat. 1057).

The Commissioner included all of this insurance in excess of $40,000 in the gross estate except four policies totalling over $19,000, in which decedent had reserved the right to change the beneficiaries. By answer before the Board, the Commissioner sought to include the proceeds of the above four policies as having been erroneously omitted. The inclusion of these policies by the Board is the matter of complaint here.

Petitioners contend that they neither are nor could be included under the act of 1924. The argument that they are not included is a matter of construction depending on whether section 302 (g) of the act, 26 USCA § 1094 note, was made retroactive by 302 (h), 26 USCA § 1094 note. The pertinent provision of 302 (g) is that the taxable gross estate shall include "to the extent of the excess over $40,000 of the amount receivable by all other [than the executor] beneficiaries as insurance under policies taken out by the decedent upon his own life." 302 (h) is that: "(h) Subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein whether made, created, arising, existing, exercised or relinquished before or after" the enactment of this act.

Petitioners argue that retroactive operation of a statute must be clearly expressed, and that by no "stretch of the imagination could a policy of insurance in subdivision (g) be denominated a transfer, or a trust, or an estate, or an interest, or a right, or a power, or a relinquishment of a power," within the meaning of 302 (h). It is true that retroactive operation of a statute must be clearly expressed, but 302 (h) expressly applies to (g), therefore, this matter reduces to whether any of the enumeration in (h) is applicable to these policies. It is conceded that a free power of change of beneficiary by the decedent continued to his death as to all of these four policies. This matter is ruled by Chase Nat. Bank v. U. S., 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388, where it was held that the statute (there the act of 1921 [42 Stat. 277, 278] exactly similar in such respect to the act of 1924, involved here) taxed "transfers," that the right in decedent to change beneficiaries was a "power" constituting a substantial incident of ownership, and "its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power

than a transfer effected in other ways through death" (page 335 of 278 U. S., 49 S. Ct. 126, 127). Since the Chase Case holds that the right to change beneficiaries continuing until death is a "power," and that the termination of that right by death is a "transfer" of such power subject to a transfer (estate) tax, and since (h) makes (g) retroactive as to "transfers" and as to "powers," it is evident that (g) is clearly applicable to these policies.

 Whether section 302 (g) could be made applicable to these policies is a question of power in Congress to do what it attempted to do thereby. Petitioners rely upon Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934, as sustaining this lack of power, while respondent depends upon Chase Nat. Bank v. U. S., 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388, and Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397. The Frick Case involved an estate tax on policies of insurance upon his life. Some of these policies were not subject to change in beneficiary, others, apparently, were. The power of Congress to levy such a tax on the policies and to require payments by the beneficiaries or by the executor were questions "mooted by counsel, but not decided." See comment in Chase Nat. Bank v. U. S., 278 U. S. 327, 333, 49 S. Ct. 126, 127, 73 L. Ed. 405, 63 A. L. R. 388. As to such questions the court intimated they "would be * * * very serious" (page 251 of 268 U. S., 45 S. Ct. 487, 488), and preferred to determine the case on the basis that the applicable statute (Revenue Act of 1919) applied only to policies issued after the act. In the Chase Nat. Bank Case, the validity of the estate tax on policies, all of which provided for change of beneficiaries, under the Revenue Act of 1921, was squarely presented and the power of Congress sustained. That case is decisive of this contention here. A similar conclusion is announced in Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 69 A. L. R. 397, which involved a trust estate created by decedent with power of revocation continuing until his death. Also see Porter v. Commissioner, 288 U. S. 436, 53 S. Ct. 451, 77 L. Ed. 880, and Cook v. Commissioner, 66 F. (2d) 995, 996 (C. C. A. 3).

The result is that the decision of the Board is modified to permit reduction of the net taxable estate by allowance of the commissions paid to the executors as a deduction, and is otherwise affirmed. The case is remanded, with instructions for action to the above effect.