**UNITED STATES v. BINGHAM et al.**

No. 2983.

Circuit Court of Appeals, First Circuit.

March 26, 1935.

BINGHAM, Circuit Judge, dissenting in part.

Arnold Raum, Sp. Asst. Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., on the brief), for the United States.

George S. Fuller, of Boston, Mass. (Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from the judgment of the District Court of Massachusetts in a proceeding to recover a refund of an estate tax assessed under section 402 (f) of the Revenue Act of 1918 (40 Stat. 1057, 1098), and paid by the executors.

The basis of the tax was seven insurance policies, all taken out by the testator prior to 1900 and either assigned to his wife or made payable to his wife or son.

Four policies issued by the Berkshire Life Insurance Company, a Massachusetts company, were originally payable at the death of the testator to his executors, administrators, or assigns. In June, 1904, the testator assigned the four policies to the company as security for a loan of $5,-900, which was outstanding at his death on February 27, 1921.

In July, 1904, the testator assigned the four policies, subject to the prior assignment, to his wife, provided she survived him.

A fifth policy was issued by the Connecticut Mutual Life Insurance Company of Hartford, Conn., and named the wife of the testator as beneficiary, with a provision that if she did not survive him, it was payable to his children; and if there were no children or descendants thereof living at his death, it was payable to his estate. It was also further provided that at the end of ten years, it being a ten-payment life policy, the insured could himself draw the cash value of the policy, or at the end of each five-year period thereafter. The testator did not avail himself of the provision before his death, the last five-year period ending May 22, 1918, and the next five-year period did not end until 1923, more than two years after his death.

The sixth and seventh policies were issued by the Manhattan Life Insurance Company of New York, one of which was made payable to his wife, and the other to

his son. Neither contained a provision for a cash surrender value or the right to change the beneficiary.

The Commissioner of Internal Revenue included in the gross estate of the testator the proceeds of all of the policies above the exemption provided in section 402 (f) of the Act of 1918. His ruling was rejected by the District Court on the authority of Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 488, 69 L. Ed. 934, on the ground that the policies were all issued prior to the enactment of the Revenue Acts, and section 402 of the Revenue Act of 1918 was not made retroactive.

An examination of the Frick Case, however, leads us to the conclusion that it is not determinative of the present case. While it is claimed that some of the policies in the Frick Case, though payable to his wife and children, contained provisions for a change of beneficiaries, these provisions, if they existed, were not referred to by the court in its opinion. The contentions raised in that case were directed more particularly to the constitutionality of section 402 of the 1918 Act on the ground that there was no transfer of property of the testator at death, and that the proceeds of insurance policies belonged to the wife and daughter, and, therefore, could not be taxed as property passing at the testator's death.

The court said: "That at least there would be a very serious question to be answered before Mrs. Frick and Miss Frick could be made to pay a tax on the transfer of his estate by Mr. Frick. [See section 408 of 1918 Act (40 Stat. 1100).] There would be another if the provisions for the liability of beneficiaries were held to be separable and it was proposed to make the estate pay a transfer tax for property that Mr. Frick did not transfer." It avoided a decision of these questions by holding that the statute of 1918 was not retroactive and, therefore, did not apply to policies issued prior to the enactment of the Revenue Acts imposing estate taxes, adding, as its reason for this interpretation that, "acts of Congress are to be construed if possible in such a way as to avoid grave doubts of this kind."

Since this decision, the Supreme Court has more clearly defined what passes at death in the case of trusts and insurance policies, and held that, if the vesting of the property in a donee, grantee, or beneficiary is not complete until the death of the grantor, donor, or testator, and there is a complete shifting of the economic interest at death, there is a transfer subject to a tax under the Revenue Acts.

It is "transfers at death," as later interpreted by the Supreme Court in Chase National Bank et al. v. United States, 278 U. S. 327, 49 S. Ct. 126, 127, 73 L. Ed. 405, 63 A. L. R. 388, Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397, Tyler et al. v. United States, 281 U. S. 497, 51 S. Ct. 398, 75 L. Ed. 996, Klein et al. v. United States, 283 U. S. 231, 51 S. Ct. 398, 75 L. Ed. 996, and Third National Bank & Trust Co. of Springfield et al. v. White (D. C.) 45 F.(2d) 911, affirmed in 287 U. S. 577, 53 S. Ct. 290, 77 L. Ed. 505, that are taxed under the acts of 1918 and 1921.

While the insurance policies in the case of Chase National Bank et al. v. United States, supra, were issued after the passage of the act of 1918, the court held that in case of a reservation of a right to change beneficiaries:

"It is true, as emphasized by plaintiffs, that the interest of the beneficiaries in the insurance policies effected by decedent 'vested' in them before his death and that the proceeds of the policies came to the beneficiaries, not directly from the decedent, but from the insurer. But until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them. The precise question presented is whether the termination at death of that power and the consequent passing to the designated beneficiaries of all rights under the policies freed of the possibility of its exercise may be the legitimate subject of a transfer tax, as is true of the termination by death of any of the other legal incidents of property through which its use or economic enjoyment may be controlled.

"A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors, Cohen v. Samuels, 245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143 (see Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. [N. S.] 148), and which may, under local law applicable to the parties here, subject them in part to the payment of his debts, N. Y. Domestic Relations Law, N. Y. (c. 14,

Consol. Laws), § 52; Kittel v. Domeyer, 175 N. Y. 205, 67 N. E. 433; Guardian Trust Co. v. Straus, 139 App. Div. 884, 123 N. Y. S. 852, affirmed 201 N. Y. 546, 95 N. E. 1129, is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death."

The court in this case, referring to the case of Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565, as supporting its conclusion, said, pages 336, 337 of 278 U. S., 49 S. Ct. 126, 128:

"But we think that the rule applied in Saltonstall v. Saltonstall, supra, to a succession tax is equally applicable to a transfer tax where, as here, the power of disposition is reserved exclusively to the transferor for his own benefit. Such an outstanding power residing exclusively in a donor to recall a gift after it is made is a limitation on the gift which makes it incomplete as to the donor as well as to the donee, and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers."

■ We think this case disposes of the constitutional objection to the provisions of the acts of 1918 and 1921 raised in the Frick Case, and it matters not that the policies were issued prior to the enactment of these acts, if the testator still retained control of the policies and retained an interest therein which passed by his death to the beneficiary or assignees after these acts were passed.

This interpretation has been followed in all decisions of the Circuit Courts of Appeals following the decision in Chase National Bank Case, Heiner v. Grandin, 44 F. (2d) 141; Liebes v. Commissioner, 63 F. (2d) 870, 92 A. L. R. 938; Levy's Estate v. Commissioner, 65 F.(2d) 412; Cook et al. v. Commissioner, 66 F.(2d) 995; Scott et al. v. Commissioner, 69 F.(2d) 444, 92 A. L. R. 531. In Heiner v. Grandin there was a minority opinion following the opinion in the Frick Case; but the Grandin Case was decided before the decision in the Chase National Bank Case. After the decision in the Chase National Bank Case, there was a reargument in the Grandin Case, and the court in a per curiam, 56 F.(2d) 1082, affirmed the majority opinion in 44 F.

(2d) 141. Certiorari was denied 286 U. S. 561, 52 S. Ct. 643, 76 L. Ed. 1294.

■ We think that under the decisions of the Supreme Court since the Frick Case, the four Berkshire policies were taxable. The wife of the testator under these policies received by the assignment of these policies only a contingent interest, unless she survived the testator. Not until his death was her interest therein complete. Therefore, there passed to her at his death an additional interest in the proceeds of the policies which occurred while the act of 1918 was in effect.

■ The proceeds of the Connecticut policy must also be held taxable, subject to the limitation contained in section 402 (f) of the 1918 act. The Supreme Court in the Chase National Bank Case also said, page 337 of 278 U. S., 49 S. Ct. 126, 128:

"Obviously, the word 'transfer' in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another."

The beneficiary, under this policy, did not have an absolute right to the proceeds, since it was dependent on her surviving the insured. In case she did not survive him, it was payable to the insured's children, or, if there were no such children or descendants thereof living at his death, the proceeds were made payable to the legal representative of his estate; and inasmuch as the testator reserved the right to demand its cash surrender value on the day it became a paid-up policy, and at the end of each five-year period thereafter, until his death, he had an interest in the policy; and his wife's absolute right to the proceeds was conditioned, not only on her surviving him, but also on his failing to survive each five-year period. It was his death before hers which finally terminated his rights under the policy and rendered the rights of the beneficiary absolute and complete. It is obvious, we think, that the wife's rights under the policy were enlarged by his death.

■ In the Manhattan policies no right of cash surrender or to change the beneficiaries was provided. The insured had no interest in these policies that could be termi-

nated at his death. His failure to pay the premiums might terminate the interest of the beneficiary, but it would terminate no interest that could possibly revert to or benefit him. Therefore, no estate tax should have been assessed on the Manhattan policies.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion.

BINGHAM, Circuit Judge (dissenting in part).

This case presents the question whether the Commissioner of Internal Revenue was authorized to include the proceeds of seven policies on the life of the testator, King Upton, in his gross estate and impose thereon a tax under section 402 (f) of the Revenue Act of 1918. Four of these policies were assigned to his wife, provided she survived him. In two other policies his wife was the beneficiary in one and his son in the other. The remaining policy named the wife as beneficiary and provided that, if she did not survive him, it was payable to his children. This policy (the Connecticut one) contained a further provision giving the testator a recurrent power, the terms of which are hereafter given in full.

The testator died February 27, 1921, without having exercised the power at any recurrent period.

All of these policies are in excess of the $40,000 exemption on policies payable to beneficiaries other than to the estate of the decedent, provided for in section 402 (f) of the Act of 1918, and the main question in determining the right to include the avails of the Connecticut policy in the gross estate and subject them to taxation is whether, at the time of the testator's death, he had an interest in the policy which passed to the beneficiary or a power which he could have exercised at the time of his death.

As to the first four policies (those of the Berkshire Life Insurance Company) and the other two (those of the Manhattan Life Insurance Company), I am in entire accord with the conclusion reached as to each in the opinion of the court, but as to the remaining one (the Connecticut policy), it does not seem to me that the testator, at the time of his death, had any interest in that policy which passed to the beneficiary or any power which he could then exercise for the benefit of his estate, and that, unless he had

a power over the proceeds of this policy which he could then exercise, the Commissioner erred in including its avails in the decedent's gross estate, for otherwise every interest in the policy vested in the beneficiary when it was taken out. Chase National Bank v. United States, 278 U. S. 327, 334, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388.

The policy in question was for the sum of $5,000, and was payable to Annie Upton, the wife of the insured. It contained a cash surrender clause which might be exercised under certain conditions by the insured after the expiration of ten years from the date of the policy (May 22, 1883), and at the end of each five-year period thereafter, reading as follows:

"And at the end of ten years from the date hereof, or at the end of each period of five years thereafter, this Policy having been in force during such entire periods for the full sum first above named as insured hereby and not otherwise, this Company will pay a Cash Value therefor, to be ascertained by the Table of Cash Values endorsed hereon and hereby made a part of this Contract; such Cash Value to be payable at its said office upon surrender hereof within thirty days after the end of each such period, to, and this Policy to be first released and discharged to the satisfaction of said Company by King Upton, the Insured;"

The policy having been taken out May 22, 1883, the end of the ten-year period was May 22, 1893, and the end of the last five-year period that occurred before his death and when the testator could have exercised the power, was May 22, 1918, at which time he had thirty days in which to do so. He did not exercise the power on May 22, 1918, or within thirty days thereafter, or at the end of any prior period; and from May 22, 1918, down to the time of his death, February 27, 1921, he had no power which he could have exercised over the avails of the policy for the benefit of his estate or for any one else. It therefore cannot be said that, at the time of his death, he had a power over the cash value of this policy which he then could have exercised and that, by his failure to do so, an interest passed to his wife. Had he lived until May 22, 1923, he would have acquired a power which he could then have exercised, but he did not live to that time and had no such power at the time of his death.

It is fairly certain that the decision in Chase National Bank v. United States, supra, is not controlling here, for in that case

the decedent had a power which he could have exercised at the time of his death for the benefit of his estate, and his failure to do so transferred an interest to the beneficiary. Not so here.

Neither does it seem to me that the decision in Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 359, 74 L. Ed. 991, 69 A. L. R. 758, is controlling here. There the relevant provisions of the taxing statute were sections 202 and 202 (c), Revenue Act 1916 (39 Stat. 756, 777, 778). In 202 (c) Congress manifested an intention to tax the interest of a deceased tenant by the entirety by specifically providing that the interest of a tenant by the entirety, except such part thereof as might be shown to have originally belonged to some other person and never to have belonged to the decedent, should be included in his gross estate; and the only question was whether Congress had the power to impose such a tax, inasmuch as, at common law, no interest in property held by husband and wife by the entirety passed at the death of either to the survivor. But Congress having specifically provided that such an estate should be included for taxation in the gross estate of a decedent, if created by him out of his estate, and it appearing that the estate by the entirety was created out of the decedent's estate, and, as a matter of fact, though not as a matter of law, the estate of the wife was enlarged by the death of the husband, and "because of it, she, for the first time, became entitled to exclusive possession, use and enjoyment; * * * and became entitled to hold and enjoy it absolutely as her own; and * * * of disposing of the property by an exercise of her sole will," the court, in that case, was of the opinion that Congress had the power, under the Constitution, to tax such an interest. There the decedent, down to the time of his death, had an interest in the entirety which he could enjoy, including all the income. Cooley v. Commissioner (C. C. A.) 75 F.(2d) 188, decided January 31, 1935. But here the decedent had no interest in the policy or power of control over it which he could exercise at the time of death. The wife's title to the proceeds of the policy was complete before his death. He could not at the time of death defeat it and his death did not perfect her title or enlarge her estate. The situation existing at the time of his death is or should be controlling, not what it might be at some other time.