**NEWMAN et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 7301.**

Circuit Court of Appeals, Fifth Circuit.
March 28, 1935.

Rehearing Denied April 20, 1935.

SIBLEY, Circuit Judge, dissenting.

Ralph J. Schwarz and Edwin T. Merrick, both of New Orleans, La., for petitioners.

Frank J. Wideman, Asst. Atty. Gen., Helen R. Carloss, Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., and John D. Kiley, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for respondent.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

An appeal from the decision of the Board of Tax Appeals, 29 BTA 53, this case involves a deficiency in estate taxes imposed under the Revenue Act of 1926, on account of life insurance policies Edgar Newman had taken out in favor of his wife, Elsa Schwartz Newman, as beneficiary. The Board made findings of fact in substance as follows:

"The petitioners are the duly qualified executors of the estate of Edgar Newman, who died in New Orleans March 9, 1928, and whose estate was administered in the Civil District Court for the Parish of Orleans, State of Louisiana. At the time of his death there were in existence fifteen life insurance policies on the decedent's life aggregating $176,551.13 and a death benefit from the Pottery, Glass, and Brass Salesmen's Association of America in the amount of $300. All the policies were taken out prior to the enactment of the Revenue Act of 1918, except one in the amount of $5,327.45 which was taken out on December 28, 1923.

"Each of the policies was made payable to Elsa Schwartz Newman, wife of the decedent, and contained the following clause in regard to the decedent's right to change the beneficiary:

"Subject to the rights of any Assignee, the Insured may from time to time, while this Policy is in force, designate a new beneficiary by filing a written notice thereof at the Home Office of the Company, accompanied by this policy for indorsement. Such change shall take effect on the indorsement of the same on this Policy by the Company, and not before. Should there be no Bene-

ficiary living at the time this Policy becomes a claim by death, the proceeds thereof shall be paid to the Executors, Administrators, or Assigns of the Insured.

"The decedent at no time ever changed the beneficiary in any of the policies above mentioned.

"The premiums on all the policies were paid out of community income from the community that existed between the decedent and his wife, Elsa Schwartz Newman.

"In the audit of the Federal estate tax return, the Commissioner included all the proceeds of the policies in excess of $40,000, of the aggregate amount of $136,851.13 in the gross estate, pursuant to Section 302 (g) of the Revenue Act of 1926, infra."

The case arises under section 302 of the Revenue Act of 1926, 44 Stat. 9, 70, Section 1094 USCA title 26. These are the applicable portions of the Act:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—* * *

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

"(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act [February 26, 1926]." U. S. C. Appendix title 26, § 1094 (g, h).

Section 301 (a) of the same act, section 1092 USCA title 26, is in part as follows: "A tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 1095 of this title) is hereby imposed upon the transfer of the net estate of every decedent dying after February 26, 1926. * * * *"

Treasury Regulation 70, art. 25, provides, "insurance is deemed to be taken out by the decedent in all cases where he pays all the premiums directly or indirectly, whether or not he makes the application. On the other hand, the insurance is not deemed to be taken out by the decedent, even though the application is made by him, where all the premiums are actually paid by the beneficiary. Where partly paid by both, the insurance will be deemed to have been taken out by the insured in the proportion that the premiums paid bear to the total amount." While article 28, Valuation of Insurance, provides "the amount to be returned where the policy is payable to or for the benefit of the estate is the amount receivable. Where the proceeds are payable to a beneficiary, and all premiums were paid by the decedent, the amount to be listed on Schedule C of the return is the full amount receivable. Where only a portion of the premiums was paid by the decedent, the amount to be listed is in proportion to the premiums the decedent paid."

The Board sustained the Commissioner's action. In a carefully written opinion it gave its reasons for doing so. We agree with the opinion. Because we do, appellants' claims here, the same the Board rejected, that none of the proceeds, or at most only half of them, should be included, will not be greatly discussed. We shall content ourselves with pointing out wherein they fail. And first, of the claim that none of the proceeds may be counted in the gross estate. This claim, founded on the erroneous idea that the tax is on the proceeds themselves, expands into three contentions: (1) That since under Louisiana laws policies taken out by the husband on his own life, naming the wife as beneficiary, are her separate property, their proceeds form no part of his estate. (2) It is not a proper construction of the taxing act to give it retroactive application to policies taken out, as these were, prior to the Revenue Act of 1918 (40 Stat. 1057), the first to tax such amounts receivable. (3) If so construed, the act meets, and falls under, constitutional objections. We cannot at all agree. The tax is not upon the proceeds of the policies; it is not upon the interest to which the beneficiary succeeded at death, but upon the right of disposition and control the insured had at death. There was no gift here inter vivos. The decedent possessed, until his death, the full right to change the beneficiary. The tax rests on this fact. "The thing taxed is the transmission of property from the dead to the living." Heiner v. Donnan, 285 U. S. 322, 52 S. Ct. 358, 359, 76 L. Ed. 772. "Tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from

which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested. * * * It is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties. * * * In other words, the public contribution which death duties exact is predicated on the passing of property as the result of death." Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 753, 44 L. Ed. 969; Heiner v. Donnan, supra.

All of the cases in which these death duties have been examined, some involving life insurance,[1] some trusts, Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397; Porter v. Commr., 288 U. S. 436, 438, 53 S. Ct. 451, 77 L. Ed. 880; some dower, Scott v. Commr. (C. C. A.) 69 F.(2d) 444, 92 A. L. R. 531; some joint tenancy, Gwinn v. Commr., 287 U. S. 224, 53 S. Ct. 157, 77 L. Ed. 270; and some tenancy by the entirety,[2] have, whether denying or affirming the validity of the tax, hewed to the same line. Where death finally dissolves an interest in, stills the power of disposition as to, of is the final act of transmission of property, and the statute embraces the property, death duties have been sustained, without regard to when the uncompleted gift was initiated.

Where the property is excluded by the terms of the statute, Crooks v. Haralson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156, or where "the 'generating source' of such a gift is to be found in the facts of life and not in the circumstance of death," Heiner v. Donnan, supra, Coolidge v. Long, 282 U. S. 582, 51 S. Ct. 306, 75 L. Ed. 562, the validity of the tax has been denied. No Supreme Court case, except the Frick Case (Lewellyn v. Frick), 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934, and no case in a Circuit Court of Appeals, has seriously raised any question as to the power of Congress to make the tax apply to uncompleted gifts, like these policies, reserving, as they do, the right to change the beneficiary, because they

had their inception before 1918. All except that case impliedly or expressly affirm the power. If the broad language of section 301, Act of 1926, title 26 USCA § 1092, supra, that the tax is imposed upon the transfer of the net estate of any decedent dying after February 26, 1926, and of subdivision (g), section 1094, supra, need support for the extension of the power to the policies in question, subdivision (h), section 1094, giving general application to subdivision (g) supplies it. Appellant cites no authoritative decisions in support of her view that the section does not in terms apply to these policies. There is ample authority that it does. Heiner v. Grandin (C. C. A.) 44 F.(2d) 141; 56 F.(2d) 1082; Liebes v. Commr. (C. C. A.) 63 F.(2d) 870, 92 A. L. R. 938, and authorities cited in note 1, supra.

Its second point, that the tax should be measured not upon the whole, but upon one half of the proceeds, rests upon the same erroneous assumption and is answered in the same way. Still basing upon the idea that the tax is on the proceeds themselves, that what is taxed is what would have been the property of the estate, but for the gift to the beneficiary, the argument is pressed that had the decedent changed the policies to his estate, the proceeds would have been community property, and only one-half would have belonged to his estate. The argument then proceeds that since in no event could the decedent's estate have owned more than one-half, in no event could more than one-half of the proceeds be taken as a measure of the tax.

This notion that the death tax is on, and is therefore limited to the value of what passed from the decedent as property at his death, was thoroughly exploded in the cases involving joint tenancies and tenancies by the entirety, note 2, supra. In the Tyler Case, though by the settled course of state decision nothing passed in tenancies by the entirety from one spouse to the other at death, it was held that the value of a tenancy by the entirety was properly included in the gross estate, and that death duties measured by that value were validly exacted.

[1] Chase Nat. Bank v. U. S., 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388; Levy's Estate v. Commr. (C. C. A.) 65 F.(2d) 412; Scott v. Commr. (C. C. A.) 69 F.(2d) 444, 92 A. L. R. 431; Cook v. Commr. (C. C. A.) 66 F.(2d) 995; Liebes v. Commr. (C. C. A.) 63 F. (2d) 870, 872, 92 A. L. R. 938; Sampson v. U. S. (D. C.) 1 F. Supp. 95.

[2] Tyler v. United States, 281 U. S. 497, 498, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758; Phillips v. Dime Trust, 284 U. S. 160, 52 S. Ct. 46, 76 L. Ed. 220; Third National Bank v. White, 287 U. S. 577, 53 S. Ct. 290, 77 L. Ed. 505; Lang v. Commr., 289 U. S. 109, 110, 53 S. Ct. 534, 77 L. Ed. 1066; Levy's Estate v. Commr. (C. C. A.) 65 F.(2d) 412.

In the Gwinn Case the same thing was held of a California joint tenancy. Since then, it is not property, but the effect of death on the control and disposition of property, which is the subject of the tax, it is therefore immaterial here, that as is undoubtedly the case, the proceeds of insurance policies payable to the estate of a decedent, taken out during the existence of the community, though exempt from debts, are the community's and only one-half of them belongs to the estate of the decedent. Succession of Erwin, 169 La. 877, 126 So. 223; Succession of LeBlanc, 142 La. 27, 76 So. 223, L. R. A. 1917F, 1137; Estate of Carroll v. Commr., 29 BTA 11; Succession of Buddig, 108 La. 406, 32 So. 361.

Appellants with great confidence press the further argument that the case presented is, within articles 25 and 28, Treasury Regulations, a case of the payment of premiums in part by the beneficiary and in part by the decedent. They say this results from the operation in Louisiana of the community property system.[3] That under its operation, as stipulated, the premiums the husband paid must be regarded as paid with community funds and therefore one-half by the insured, and one-half by his beneficiary. That this being so, it must be held that, within the meaning of the regulations, the beneficiary paid one-half of the premiums, and the decedent only one-half. That this contention is more logically than legally sound, we think a little reflection will show. We think it may well be doubted whether these regulations would be valid if so construed. They were adopted under a statute which does not in terms authorize any diminution on account of community payment of premiums, but on the contrary, in plain terms, requires that all over $40,000 of the proceeds of policies taken out by the insured in favor of the beneficiary, be included in his gross estate. In this view, it may well be doubted whether the regulations if so construed, would not be beyond administrative power. "The only authority conferred, or which could be conferred, by the statute is to make regulations to carry out the purposes of the act—not to amend it." Miller v. United States, 55 S. Ct. 440, 442, 79 L. Ed. ——, March 4, 1935.

■ We raise the question, however, not to decide, but to reserve it. For we think, in the light of the settled law as to these pre-mium payments, that there is no basis for the claim that they fall within the regulations invoked. That law is that when, during the existence of the community, a husband, as here, takes out a policy payable to his wife as beneficiary, but with the right reserved to change, and pays the premiums out of the community, though the proceeds at his death become her separate property, Succession of Desforges, 135 La. 49, 50, 64 So. 978, 52 L. R. A. (N. S.) 689; Nulsen v. Herndon, 176 La. 1097, 1098, 147 So. 359, 88 A. L. R. 236; Sizeler v. Sizeler, 170 La. 128, 127 So. 388; Douglass v. Equitable Life Assur. Soc., 150 La. 519, 90 So. 834, the transaction is regarded as a gift by the husband to the wife, and the estate of neither is regarded as having paid the premiums so as to be entitled to reimbursement on account of their payment. Kelly v. Kelly, 131 La. 1024, 60 So. 671; Succession of Bofenschen, 29 La. Ann. 711; Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585; Whiteselle v. N. W. Mut. Life Ins. Co. (Tex. Com. App.) 221 S. W. 575.

In the light of this rule of law, it would be a strained construction creating an unwarranted lack of uniformity, and raising grave doubts as to their validity, which would give to these regulations the meaning contended for. We think it our duty to avoid such construction.

■ We think it plain that the statute in question imposes a death tax, not upon the proceeds of insurance policies, the property of the estate, nor upon the proceeds of insurance policies which but for the gift to the beneficiary would be owned by the decedent, but upon the cessation, with his death, of the control he had over the policies, so that his death vested in the beneficiary a settled right which she did not have before. That it was within the power of Congress to impose such death duty on the full amount of the insurance procured by the husband for the benefit of the wife, but with the right so reserved to change the beneficiary as that it could not be finally hers until his death, we have no doubt. Nor have we any that the statute was written to, and as written does, impose that tax.

Affirmed.

SIBLEY, Circuit Judge (dissenting).

I believe in the reality of the wife's interest in the Louisiana marital community,

---

[3] Louisiana Rev. Civil Code 1870, art. 2399, art. 2402, as amended by Act No. 68, Acts of La. 1902, p. 95, art. 2403, art. 2404, as amended Act 96 La. Acts 1926, p. 136.

and I believe in the iniquity of taxing a decedent's estate with respect to wealth which he never owned. This creed compels me to dissent. The Louisiana Code speaks of the community always as a partnership; the husband being its manager. Articles 2399, 2402, 2403, 2404, 2406, 2409, 2410, 2411. Though the husband has large powers, they are not absolute. Article 2404. And the wife's interest is not a mere expectancy but a present vested title. Phillips v. Phillips, 160 La. 813, 107 So. 584. "In Louisiana, the wife has a present vested interest in community property equal to that of her husband." Bender v. Pfaff, 282 U. S. 127, 51 S. Ct. 64, 65, 75 L. Ed. 252, affirming (D. C.) 38 F.(2d) 642; Id. (C. C. A.) 38 F.(2d) 649. The federal estate tax law here involved, Revenue Act of 1926, § 302, 26 USCA § 1094, after dealing with the case of insurance payable to the estate, directs the inclusion in the estate, for measuring the tax imposed upon its devolution, of "the excess over $40,000 * * * receivable by all other beneficiaries as insurance under policies *taken out by the decedent upon his own life.*" Regulation 70, art. 25, construes the words "taken out by the decedent" thus: "Insurance shall be deemed to be taken out by the decedent in all cases where he *pays all the premiums* either directly or indirectly, whether or not he makes the application. On the other hand the insurance is not deemed to be taken out by the decedent even though the application is made by him where *all the premiums are actually paid by the beneficiary.* Where a *portion of the premiums were paid* by the beneficiary and the remaining portion by the decedent, the insurance will be deemed to have been taken out by the latter *in the proportion that the premiums paid by him* bear to the total premiums paid." (Italics added.) The suggestion that the regulation is opposed to the statute is not sustainable. The words "taken out by the decedent" are ambiguous and may refer in a narrow sense to the act of applying for the insurance; or they may have a broader reference to the whole course of the insurance and to its economic source. The Secretary in making the interpretative regulation has from the beginning rejected the making of the application as the important thing. Such a construction could lead to great absurdity and injustice. The construction adopted and consistently adhered to is that the Congress, seeking to measure the death tax by the value of the decedent's estate and to abort all effort to avoid the tax by antecedent dispositions made in contemplation of death or ripened by death, must have meant that insurance on the decedent's life paid for by the decedent in whole or in part, no matter who made the application, was taken out by him to the extent that he paid for it.[4] The repeated re-enactment of the same statutory words strongly indicates legislative approval and adoption of the executive construction. Brewster v. Gage, 280 U. S. 327, 328, 337, 50 S. Ct. 115, 74 L. Ed. 457; Massachusetts Mutual Life Ins. Co. v. United States, 288 U. S. 269, 53 S. Ct. 337, 77 L. Ed. 739; Burnett v. Brooks, 288 U. S. 378, 379, 53 S. Ct. 457, 77 L. Ed. 844, 86 A. L. R. 747. Taking the regulation therefore at its face value, who applied for the insurance is immaterial; the question is, Who paid the premiums which created it? The thought is that although the insurance is to go to the appointed beneficiary and the federal law does not seek to interfere with that, still the insurance contract represents an investment of the premiums, and so far as the decedent thus invested his money which would otherwise have been a part of his estate, that far the disposition, especially when he reserves the right to change the beneficiary, may be considered both as in contemplation of death and as incomplete until death and justly to be included in measuring his estate tax. It is wholly a question of federal law. The law of Louisiana as to who gets the insurance and what account if any is due to the community estate where the premiums are paid out of it is wholly immaterial. The federal statute asks but one question, Whose money paid the premiums? In this case there can be but one answer. It was money which belonged equally to the husband and wife. Both equally paid the premiums. The husband paid only half. Only half of the resulting investment is to be included in measuring this tax.

The decisions cited in the prevailing opinion touching estates by the entirety do not help its argument, for as stated in Tyler v. United States, 281 U. S. 497, at pages

---

[4] Art. 32 of the Regulations under the Revenue Act of 1918 is quoted in Thurber, Federal Estate Taxes (1921) § 77. The identical words of that statute are re-enacted in Revenue Acts of 1921, § 402 (f) 1924 § 302 (g) and 1926 § 302 (g). 42 Stats. p. 279. 43 Stats. p. 305 (26 USCA § 1094 note). 44 Stats. p. 71 (26 USCA § 1094 (g).

500, 501, 505, 50 S. Ct. 356, 358, 74 L. Ed. 991, 69 A. L. R. 758, the statute expressly included such estates, but also expressly excepted "such part thereof as may be shown to have originally belonged to such other person and never to have belonged to the decedent"; and as to the estate held to be taxable it is said: "None of the property constituting it had, prior to its creation, ever belonged to the surviving spouse." Here half of the original investment did belong to the surviving spouse, and the applicable statute rightly interpreted excepts her half. This interpretation is supported by its consistency with the provision regarding estates by the entirety. I think only half of this insurance represents an investment of funds of the decedent and only half ought to be included in measuring his estate tax.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the decision of the court in the above-numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.