ESTATE OF HORACE K. FAWCETT, DECEASED, EIKA MAE FAWCETT, INDEPENDENT EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1517-74.   Filed August 18, 1975.

*Elwood Cluck* and *Clyde Johnson III,* for the petitioner.
*Harold Friedman, William T. Overton,* and *David Smith,* for the respondent.

STERRETT, *Judge:* The respondent determined a deficiency in the Federal estate tax due from the Estate of Horace K. Fawcett in the amount of $40,760.83.[1] The issues before the Court are: (1) Whether the petitioner is entitled to reduce the value of the gross estate of Horace K. Fawcett by the full amount of a note due to the Travelers Insurance Co. secured by 17,538.2 acres of ranch land in Texas though the total gross estate included only the value of Horace K. Fawcett's undivided one-half interest in this land; (2) the value at the time of his death of decedent's undivided one-half interest in the above 17,538.2 acres of ranch land; and (3) whether petitioner is entitled to a deduction for estate tax purposes for attorney and accountant's fees and trial expenses incurred in the administration of decedent's estate and in this proceeding.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Eika Mae Fawcett (hereinafter petitioner), the independent executrix of the Estate of Horace K. Fawcett, deceased (hereinafter the estate), was a resident of Del Rio, Tex., at the time of filing her petition herein. The Federal estate tax return was timely filed with the Director of the Internal Revenue Service Center in Austin, Tex.

Horace K. Fawcett (hereinafter the decedent) died on November 29, 1969. Surviving him were his wife (the petitioner)

---

[1] Respondent would allow additional credit for State inheritance tax based on the increase in value of the estate if payment is substantiated.

and his four children, Horace K. Fawcett, Jr., Frances Fawcett Paret, David York Fawcett, and Curtis J. Fawcett (hereinafter the children). At the time of his death decedent was a resident of Del Rio, Tex.

The decedent was born in October 1904 in Val Verde County, Tex., and throughout his life was engaged in the ranching business in Val Verde County. Decedent married the petitioner in January 1931 and such marriage continued without interruption until his death.

Prior to his marriage decedent purchased approximately 6,700 acres of ranch land in Val Verde County. Subsequent to his marriage decedent acquired approximately 10,800 acres of ranch land by gift or inheritance from his father and mother. All of the above acreage was held by decedent under the laws of the State of Texas as his separate property and estate; and his wife (the petitioner) neither owned, held, nor claimed any interest in said lands as a part of the community estate of decedent or herself or otherwise. The above acquisitions constitute 17,538.2 acres of contiguous land forming what is commonly referred to as the Horace K. Fawcett Ranch (hereinafter the subject ranch or property).

In September 1964 the decedent and petitioner borrowed $235,000 from the Travelers Insurance Co. (hereinafter Travelers). The debt was evidenced by a note cosigned by them and secured by a deed of trust on the subject ranch.

In December 1965, the decedent gave a life estate interest in one-half of the surface of the subject ranch in equal proportions to his four children with remainder in trust for their issue. Such undivided one-half interest was conveyed subject to and charged with one-half of the indebtedness in the then principal sum of $216,000 together with one-half of the interest accruing from the date of gift owing to Travelers. The balance due on this note payable to Travelers on November 29, 1969, was $210,000 plus accrued interest of $1,860.83.

In 1968 portions of the subject ranch were leased to third parties. The decedent collected all of the rentals due under these leases and issued notes bearing interest at 5 percent to his children in payment for their appropriate shares. These notes were outstanding at decedent's death.

During the course of respondent's audit the deed records and the tax assessment rolls were reviewed to determine the total

extent of the real property owned by the decedent. During this inspection no agreement was found between decedent, petitioner, and/or his children in their capacities as individuals or trustees to repay or contribute to any portion of any payment on the note due Travelers.

The subject ranch is located in east central Val Verde County approximately 35 miles north of Del Rio. It is about 8 miles west of U.S. Highway 277 and is connected to this highway by a gravel road through an adjoining neighbor's land. Access to the subject ranch through this route is convenient but not guaranteed. The property does have deeded legal access over a longer northern route, but it is susceptible to flooding, requiring major repair.

The subject ranch's terrain is extremely rough. The ranch is composed of header canyons, steep hills, slick rock areas, large canyons, and stony soil. Pictures depicting various views of the ranch were made part of the record. The property is cut by the Devil River which provides attractive riverfront property, including Dolan Falls, and good recreational facilities. The property is additionally watered by several windmills providing highly palatable water.

The highest and best use of the subject ranch is raising livestock, primarily cattle, sheep, and goats. The subject ranch does have a bitterweed problem, a toxic weed upon which the livestock will feed. There is also a catclaw bush problem, a bush in which the goats can become entangled causing death by starvation. The subject ranch has approximately 28 miles of perimeter fencing and 32 miles of interior fencing.

The building improvements on the subject ranch include a main dwelling, garage, shop, barn, labor house, shearing barn, horse and sheep pens, and corrals. There is also an airstrip in fair condition near the main dwelling and an emergency airstrip near the river. The main dwelling was built with concrete and stone and has two floors and open porches consisting of approximately 3,200 square feet. It is in good condition and the other structures are in fair to good condition.

Petitioner, on the Federal estate tax return, included in the total gross estate the value of decedent's one-half interest in the subject ranch. Petitioner included in the deductions from the gross estate the full amount of the outstanding balance ($210,000) of the note due Travelers.

Respondent disallowed one-half of this deduction as follows:

It is determined that the estate is allowed a deduction in the amount of $105,000.00 for note payable to the Travelers Insurance Company for the reason that only one-half of the value of the property securing the note is included in the value of gross estate and only one-half the note secured by the property is allowed as a deduction. Accordingly, the value of taxable estate is increased in the amount of $105,000.00.

Petitioner reported the value of decedent's one-half interest in the subject ranch at $220,000 or approximately $25 per acre. In his deficiency notice respondent determined that the fair market value of decedent's interest in the subject ranch was $438,455, or approximately $50 per acre and the original deficiency of $31,356.08 [2] was in part based on this adjustment. Subsequently respondent engaged an independent appraiser to examine the subject ranch and he concluded that the fair market value of decedent's interest was $500,000, or approximately $57 per acre. Based on this appraisal respondent filed an amendment to his answer increasing the deficiency to the amount now in issue.

Petitioner also included as deductions from the gross estate administration expenses of $7,516.12.[3] Included in this figure are estimated expenses for court costs and attorney's and accountant's fees. Respondent disallowed these expenses claiming it had not been established that these expenses were paid.

OPINION

The case at bar presents three issues for our determination: (1) Whether petitioner is entitled to reduce the value of decedent's gross estate by the full amount of the note due Travelers that is secured by the subject ranch; (2) the fair market value at the date of decedent's death of his undivided one-half interest in the subject ranch, and (3) whether petitioner is entitled to deduct for estate tax purposes attorney's and accountant's fees and trial expenses incurred in the administration of the estate and in this proceeding.

In 1964 decedent and his wife (the petitioner) borrowed $235,000 from Travelers. This loan was evidenced by a note and a deed of trust on the subject ranch both of which were signed by them. In 1965 decedent conveyed an undivided one-half interest

---

[2] See n. 1 *supra*.
[3] Petitioner's schedule of these expenses totals only $6,716.12. The difference is apparently attributable to two math errors. The estimated expenses in issue total $4,800.

in the subject ranch in equal parts to his children subject to the outstanding indebtedness.

When decedent died in November 1969, the balance due on the note was $210,000. After his death those regular payments due on the Travelers note were made. Petitioner included in the decedent's gross estate the fair market value of his undivided one-half interest in the subject ranch and then reduced the value of the gross estate by the full amount of the balance due Travelers.

Petitioner maintains that she is entitled to a full deduction with respect to the Travelers note under section 2053(a) (3) or 2053(a) (4),[4] I.R.C. 1954.[5] Alternatively she maintains that under section 2033 [6] only the decedent's net equity interest in the subject ranch (fair market value of decedent's interest less the outstanding debt) need be included in the decedent's gross estate.

Respondent maintains that the debt due Travelers does not represent a claim against the estate within the meaning of section 2053(a)(3). Respondent further contends that, since only one-half of the mortgaged property was included in the gross estate, the petitioner is entitled to reduce the gross estate by only one-half of the outstanding debt under the provisions of section 2053(a)(4). Respondent also maintains that since the decedent's estate was personally liable for the indebtedness, petitioner's alternative argument is inappropriate.

In the *Estate of Quintard Peters Courtney*, 62 T.C. 317 (1974), this issue was presented to this Court on facts very similar to those presented in the instant case. In *Courtney* the decedent and his wife purchased a residence in Fort Worth, Tex. The purchase was financed by them with a note payable to a bank and secured by a deed of trust on the residence in favor of the

---

[4] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

    (1) for funeral expenses,
    (2) for administration expenses,
    (3) for claims against the estate, and
    (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

[5] All statutory references are to the Internal Revenue Code of 1954 as amended.

[6] SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

bank. Subsequently they gave the property to their son subject to the outstanding note and deed of trust. At decedent's death the balance due on the note was approximately $32,000. The residence was not included as an asset in the estate tax return but one-half of the outstanding balance of the note due the bank was deducted as debt owed by the estate. After the decedent's death regular payments were made on the note.

Respondent in *Courtney* determined that the estate "was not entitled to deduct either as a claim against the estate or as a mortgage debt one-half of the amount" due the bank. *Estate of Quintard Peters Courtney, supra* at 319. This Court discussed sections 2053(a)(3) and 2053(a)(4) separately and upheld the respondent's determination.

With respect to section 2053(a)(3) this Court discussed the Texas system for independent administration of estates and determined that it did not bar the deduction. The problem arose from the finding that those "Claims which Congress intended to be deducted for Federal estate tax purposes were claims presented and allowed or otherwise determined as valid against an estate and actually paid or to be paid." *Estate of Quintard Peters Courtney, supra* at 321. Based on a consideration of all the facts, including those which occurred after the decedent's death which the Court determined it could properly consider, we concluded:

> In our opinion the events which occurred after Quintard Peters Courtney's death also indicate that no claim has actually been paid by the estate, and there is no evidence showing that any claim will be paid by the Courtney estate in the future, especially if Ethel A. Courtney continues making regular payments on the note. What we have here is simply an unmatured, potential claim without an existing claimant. We think Congress did not have this situation in mind when it provided for the allowance of deductible claims under section 2053(a)(3) from the value of a decedent's gross estate. [62 T.C. at 323.]

Petitioner points out that Travelers did present its claim to the estate and that this act illustrates the estate's liability for the note. Travelers did present its claim to the estate, but it appears that it was done in response to the notice to creditors that the petitioner, as executrix of the estate, was required to publish. It does not appear that Travelers ever demanded full payment, or that it ever would in view of the fact that regular payments were being made. Furthermore it does not appear that Travelers, upon decedent's death, had the right to demand full payment of the note as long as the regular payments were being made.

In *Anna Cathcart v. Schwaner*, (S.D. Ill. 1929, 15 AFTR 564), the decedent owned approximately 767 acres of land. The decedent borrowed money on this property giving in return his own notes and a mortgage on the property. The decedent then conveyed this property to his daughter free and clear of all encumbrances. The court allowed the indebtedness as a claim against the estate because it found "that it was the intention of decedent to satisfy the indebtedness evidenced by his promissory notes and secured by the mortgage upon the Ohio farm, out of his own funds, and considered that his warranty was sufficient to save and keep harmless the grantees in his deed from any possible consequences from the lien." *Cathcart v. Schwaner, supra* at 565.

In the instant case, although the decedent personally owned the entire subject ranch, the loan from Travelers was evidenced by a note and deed of trust signed by the decedent and his wife. The conveyance to his children was made subject to the outstanding instruments. Travelers then could enforce the loan against either the decedent's estate, the petitioner, or the subject ranch. We cannot find here, as we could not find in *Courtney* upon similar facts, that the decedent intended to satisfy the indebtedness out of his own funds. Nor can we find that it was in fact so satisfied.

Accordingly we hold that the petitioner is not entitled to deduct the indebtedness due Travelers as a claim against the estate under section 2053(a)(3).

With respect to section 2053(a)(4) it is clear that only the fair market value of decedent's undivided one-half interest in the subject ranch was included as an asset while the full amount of the Travelers note was claimed as a deduction. Respondent contends that a full estate tax deduction is not allowable for a mortgage where the full value of the mortgaged property is not included in the estate.

Section 805 of the Revenue Act of 1932 amended section 303(a)(1) of the Revenue Act of 1926 as follows:

SEC. 805. DEDUCTIONS.

Section 303(a)(1) of the Revenue Act of 1926, as amended, is amended to read as follows:

"(1) Such amounts—
    * * *

"(D) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate
    * * *

The language found in this amendment is essentially the same that constitutes section 2053(a)(4).

Accompanying the Revenue Act of 1932 is a statement in both the House of Representatives and Senate reports that clarifies this particular amendment:

### SECTION 805. DEDUCTIONS

This amendment, with one exception, merely clarifies the existing law so far as it relates to an important group of deductions allowable in computing the net estate subject to estate tax. The principal changes made are:

(1) A more definite statement that, in order for a mortgage to be deducted, the full value of the mortgaged property must be included in the gross estate. This change is merely for clarification.

H. Rept. No. 708, 72d Cong., 1st Sess. (1932), 1939-1 (Part 2) C.B. 457, 491; S. Rept. No. 665, 72d Cong., 1st Sess. (1932), 1939-1 (Part 2) C.B. 496, 533. We believe this legislative history supports respondent's position.

We also believe the applicable case law supports respondent's position. See *Estate of Quintard Peters Courtney, supra; Estate of Theresa Seagrist,* 42 B.T.A. 1159 (1940); *Oreon E. Scott, et al., Executors and Trustees,* 25 B.T.A. 131 (1931), modified and affirmed on other issues 69 F. 2d 444 (8th Cir. 1934).

In the *Estate of Quintard Peters Courtney, supra* at 324, we said:

Petitioners ask that the estate be allowed to deduct a debt that it will not have to pay against property that is not its asset. The deduction under section 2053(a)(4) must be denied because the value of the property which secures the debt has not been included in the estate.

Petitioner argues that *Courtney* is distinguishable since there the property in question was entirely excluded from the gross estate while in the instant case the decedent's entire interest in the subject ranch has been included in the gross estate. To the extent the claimed deduction exceeds the amount included there is no distinction. We believe that our statement in *Courtney,* as set out above, can be appropriately applied to the situation at hand.

Accordingly we hold that petitioner is not entitled to a full deduction for the indebtedness due Travelers as an unpaid mortgage under section 2053(a)(4).

Finally we do not believe the petitioner can elect to report the decedent's net equity interest in the subject ranch under section 2033. Section 20.2053-7, Estate Tax Regs., provides that:

> If the decedent's estate is liable for the amount of the mortgage or indebtedness, the full value of the property subject to the mortgage or indebtedness must be included as part of the value of the gross estate; the amount of the mortgage or indebtedness being in such case allowed as a deduction. But if the decedent's estate is not so liable, only the value of the equity of redemption (or the value of the property, less the mortgage or indebtedness) need be returned as part of the value of the gross estate. * * *

Since it is clear that the decedent's estate was liable for this note, it appears that the petitioner must report the decedent's interest in the subject ranch and the indebtedness separately.

Accordingly, we do not believe that petitioner can properly report only the decedent's net interest in the subject ranch under section 2033.

Having discussed sections 2053(a)(3), 2053(a)(4), and 2033 and finding that petitioner cannot utilize the entire amount of the Travelers note as a deduction from the gross estate, we believe that respondent's determination must be upheld.

The second issue requires us to determine the fair market value of decedent's undivided one-half interest in the subject ranch. This issue is purely factual, its resolution depending on the unique combination of its particular facts. Our conclusion is based upon a review of all the evidence in the record including primarily the valuation reports and testimony of expert witnesses offered by each party, and deciding what adjustments in their approaches to the problem appeared reasonable in the light of the evidence presented.

Respondent originally determined that the fair market value of decedent's interest in the subject ranch was $438,455, or approximately $50 per acre. The original deficiency was in part based on this determination. Subsequently respondent filed an amendment to his answer claiming that, based upon additional information, the fair market value of decedent's interest in the subject ranch was $500,000, or approximately $57 per acre and accordingly increased the deficiency to the amount now in issue. Generally the burden of proof in matters before this Court is upon the petitioner; however, it is the respondent who must bear the burden of proof with respect to the increase in the deficiency caused by his subsequent appraisal of the subject ranch. Rule 142(a), Tax Court Rules of Practice and Procedure.

Petitioner's valuation report was prepared by Clifton C. Belcher (hereinafter Belcher). He relied basically on the market

data approach method of appraisal which involves determining the indicated value of the subject property by considering actual sales prices of similar properties located in the general area and which were sold within a reasonable time before or after decedent's death. The actual sales price is then adjusted up or down to reflect the differences between the subject property and the comparable properties. Belcher assigned a dollar-per-acre value to these variables which included differences in time, location, size, productivity, physical access, and improvements. These adjustments resulted in the indicated value per acre of the subject property.

After selecting the most comparable sale Belcher determined the fair market value of the subject ranch by multiplying the indicated value per acre by the acreage of the subject ranch. He then made a final 25-percent reduction to reflect the fact that the decedent held only an undivided interest in the subject ranch.

Respondent's valuation report was prepared by James F. Culp. His approach to this problem was similar to Belcher's. However, except for the time adjustment, he did not assign a dollar-per-acre value to the variables he considered. He compared the subject ranch to the comparable sales by making mental adjustments to arrive at his indicated values. He also did not give as much weight as Belcher did to the undivided nature of the decedent's interest in the property.

The record also includes the valuation report of Carvan Adkins, the internal revenue agent who examined the Federal estate tax return. His approach was slightly different from those described above in that he assigned a percentage factor to the variables considered.

All three reports include a description of the general vicinity, the subject ranch, and the comparable sales. They also include an analysis of the relevant data to support their varying conclusions. Both Belcher and James F. Culp used a figure of approximately 8-9 percent to reflect the time difference between the date of death and the comparable sales, while Carvan Adkins used a figure of 6 percent which he termed conservative.

The comparable sale that appears to be the most relevant (both Belcher and Carvan Adkins base their conclusions on it) is the one from C. A. Duncan to E. W. Wilson, Jr. (hereinafter the Duncan property). This was a sale of approximately 2,800 acres that borders the subject ranch on the south. The sale occurred in

January 1966 and the sales price was $49.42 per acre. This property is similar in topography, vegetation, carrying capacity, and soil composition; however, it has neither riverfront property nor deeded legal access.

In analyzing this sale Belcher determined the indicated value of the subject ranch to be $34.69 per acre. Since our ultimate conclusion is that the fair market value of the subject ranch is higher, we believe our conclusion can best be substantiated by discussing what we believe to be the flaws in Belcher's analysis.

Belcher determined that the improvements on the Duncan property were superior and not those ordinarily necessary to operate a livestock ranch. To reflect this he made a minus $20-per-acre adjustment. The record is not entirely clear as to whether his estimation is accurate. Even if the Duncan property improvements are superior we believe those on the subject ranch are at least comparable. This adjustment causes approximately a $350,000 reduction ($20 per acre × 17,538 acres) in the fair market value of the subject ranch. We believe this is excessive.

Belcher did make a plus adjustment to reflect the subject ranch's riverfront property, but we do not believe that it properly reflects its value. He used a 1961 sale of riverfront property and with a time adjustment, determined that the indicated value per acre of such property was $75.25. He then applied this figure to only the approximately 2,000 acres of riverfront property on the subject ranch. To the remaining acreage he applied the indicated value per acre ($34.69) as determined from the Duncan property sale.

This method, in effect, isolates the riverfront property from the remaining acreage. We believe that the entire subject ranch benefits from the existence of the riverfront property and that this is not reflected in Belcher's calculations.

After arriving at an indicated fair market value Belcher made a minus 25-percent reduction to reflect the undivided nature of decedent's interest. This factor causes a reduction of $170,250 in the fair market value of the subject ranch. Although we believe that such a factor should be considered to reflect the possible legal and other problems that would arise when such an interest is sold, we believe in this instance its importance is overstated.

The subject ranch was owned by a family unit, not total strangers; consequently, we believe that neither the likelihood nor the magnitude of such problems would be great. Further-

more, it appears that despite the formal ownership, the decedent was in control of the property. He was collecting all of the rentals due under the leasing arrangements and was giving notes to his children (which were unpaid at his death) in payment for their shares.

Finally it does not appear that Belcher made a plus adjustment to reflect the existence of the deeded legal access to the subject ranch. In a supplemental report Belcher described the practical problems associated with this access and illustrated the problems created by flooding. Nevertheless this access does exist and we believe it enhances the value of the subject ranch. There is also evidence in the record which indicates that the borrowing capacity of property with deeded legal access is greater.

After a careful review of the entire record, we find as ultimate fact that the fair market value of decedent's interest in the subject ranch at the time of his death was $414,340 or $47.25 per acre.

Finally respondent has disallowed attorney's and accountant's fees and costs claimed as deductions from the gross estate for lack of substantiation. These expenses were characterized as estimated expenses on the estate tax return.

Petitioner has failed to substantiate those expenses which have been incurred up to the date of trial. However, there is no doubt that the estate is entitled to a deduction for such expenses if properly substantiated, so we will permit petitioner to submit proper substantiation of the amounts that should be allowed, which can be taken into consideration in the Rule 155 computation to be submitted by the parties.

*Decision will be entered under Rule 155.*