403 So.2d 1002 (1981)
TAMPA FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant,
v.
AEON, INC., a Florida Corporation, Appellee.
No. 80-1908.
District Court of Appeal of Florida, Second District.
May 20, 1981.
*1003 Irving G. Lawrence and Eddy R. Resnick of Lawrence & Gold, Tampa, for appellant.
Simson Unterberger of Kessler & Unterberger, Tampa, for appellee.
BOARDMAN, Judge.
Tampa Federal Savings and Loan Association, defendant in the trial court, appeals a final judgment in favor of appellee/plaintiff Aeon, Inc. We affirm.
The pertinent facts of this case are that in 1969 appellee submitted a proposal to appellant to purchase six parcels of real estate owned by appellant and to borrow the funds necessary to improve the property to be purchased. Appellant's loan committee decided that in order to avoid having several small purchase money mortgages on record, it would request one large purchase money mortgage on the group of six tracts, on which a single monthly payment would be made. Glenn James, appellee's president, then requested that a provision be included in the mortgage to allow for the release of any one of the tracts from the mortgage provided a certain lump sum was paid on the mortgage. Appellant, aware that appellee was operating on a small profit margin with little ready cash, agreed to this request. It was agreed that the release amount would be at least the present appraised value of each parcel plus the repairs and fifteen per cent of the total. The mortgage (hereinafter referred to as the first mortgage) was executed in the principal amount of $51,603.54 with a release provision drawn by appellant providing:
It is agreed that the Association will release from the lien of this mortgage any of the Tracts herein described PROVIDED the payments on this loan are paid up to date, and FURTHER PROVIDED there is paid on the principal of this loan the amount shown for the TRACT to be released:
TRACT 1: $7,373.64 4337 Grove View Avenue
TRACT 2: $13,135.24 3007 Mitchell Street
TRACT 3: $14,039.37 905-26th Avenue
TRACT 4: $12,250.55 5815-2nd Street
TRACT 5: $6,537.76 9402 Semmes Street
TRACT 6: $7,675.01 7106 Taliaferro Street
Appellee subsequently submitted a second proposal to appellant for the purchase of four additional tracts of land on the same conditions as the previous transaction, and obtained a similar mortgage in the principal amount of $32,350. The release provision in this mortgage (hereinafter referred to as the second mortgage) listed the tracts as follows:
TRACT 1: $10,798.39 10322 N. Armenia Avenue
TRACT 2: $8,679.70 3707 Ohio Avenue

*1004 TRACT 3: $10,494.65 8210 Semmes Street
TRACT 4: $8,427.26 3121 Paxton Avenue
Appellee at all times kept its payments on both mortgages current. On October 1, 1979, the unpaid principal on the note secured by the second mortgage was $26,674.51. On that date, appellee tendered to appellant $2,753.27 and requested that it be applied to the unpaid principal on this note and that Tract 4 be released from the lien. Appellant refused the request and the tender, stating that the amount required to release the lien from Tract 4 was $8,427.26. On February 27, 1980, the unpaid principal on the note secured by the first mortgage was $41,952.74. On that date, appellee requested the release of Tract 5 from the lien of that mortgage. Appellant refused, advising appellee that a payment towards principal of $6,537.76 was required before appellant would execute a release. Appellee then brought this action.
The trial court found that the release provisions required and were intended to require
release of the various tracts referred to therein upon reductions in the principal sum referred to in said Mortgage and evidenced by the Promissory Note referred to in said Mortgage and not by payment to the mortgagee of the amount shown for each such tract at the time a release of a particular tract was requested by the mortgagor.
The court therefore ordered appellant to release Tract 5 (first mortgage) immediately and to release Tract 4 (second mortgage) upon payment by appellee of an amount sufficient to reduce the unpaid principal on that mortgage to $23,922.74.
Appellant takes the position that according to the trial court's ruling, under the first mortgage appellee would be entitled to the release of Tract 1 once the principal was reduced by $7,373.64, that is, by an additional $835.88 after the release of Tract 5. At this point the principal balance would be $44,229.90. As appellee made additional payments the principal balance would continue to be reduced, and appellee would be entitled to the release of an additional tract each time the principal balance was reduced by the predetermined amount for that tract set forth in the release clause until the principal balance was reduced by $14,039.37. At this point, the release of Tract 3, the last tract, would be required, and the loan would become unsecured.
We do not agree that this is what the trial court intended, although the language of its ruling is not as clear as it might have been. We are convinced that the trial court meant that the first tract release of which was requested must be released if the principal amount of the mortgage had been paid down by the amount listed for that tract in the release provision, but that the successive release of any other tract would be required only if the principal had been reduced by the sum of the principal amount listed for that tract and the principal amount listed for each and every other tract previously released that had originally constituted part of the security for the mortgage. In other words, if appellee next desires, for example, release of Tract 3 of the second mortgage, the principal must be paid down by $18,921.91, and the last tract on that mortgage cannot be released until the entire principal balance (plus interest) has been paid. In this way any principal that remains outstanding would at all times be fully secured.
This is the most reasonable construction of the language used in the release provision and appears to reflect what the parties intended. Thus the trial court has followed the primary rule of construction of a contract, which is to ascertain the intention of the parties, which is accomplished not only from the face of the instrument, but also from the situation of the parties and the nature and object of their transactions. Jackson v. Parker, 153 Fla. 622, 15 So.2d 451 (1943); Watson v. Poe, 203 So.2d 14 (Fla. 4th DCA 1967). Moreover, it is well settled that any ambiguity in a written contract will be construed against the party who drew the provision. E.g., Sol Walker & Co. v. Seaboard Coast Line Railroad Co., *1005 362 So.2d 45 (Fla.2d DCA 1978). Since appellant drafted the mortgages in question here, any ambiguity in the release provisions would have to be construed against appellant and in favor of appellee.
Finally, appellant's assertion that the trial court was prejudiced by its concern for the Gillespies, who were the buyers of one of the tracts in question and who were involved in a suit to require appellee to convey title, which action was consolidated for trial with the instant case, is without support in the record.
Accordingly, the final judgment appealed is AFFIRMED as construed in this opinion.
HOBSON, Acting C.J., and OTT, J., concur.