ESTATE OF CHARLES FRED THEIS, DECEASED, LAURA WATSON AND GUY W. THEIS, CO-PERSONAL REPRESENTATIVES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF MARY L. THEIS, DECEASED, LAURA WATSON AND GUY W. THEIS, CO-EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8736–80, 8737–80.    Filed October 17, 1983.

*William G. Davidson III*, for the petitioners.
*Alan C. Levine*, for the respondent.

---

OPINION

DAWSON, *Chief Judge*: In these consolidated cases, respondent determined deficiencies in Federal estate tax against the Estate of Charles Fred Theis, deceased, in the amount of $21,606.82, and against the Estate of Mary L. Theis, deceased, in the amount of $8,950.22.

After concessions, the primary issue for our decision is whether the balances due on certain mortgages are deductible by the estates under section 2053.[1] We must also decide to what extent the value of certain property is to be included in the gross estate of each decedent.

These cases were submitted fully stipulated pursuant to Rule 122.[2] The stipulation of facts and joint exhibits are incorporated herein by this reference. The pertinent facts are summarized below.

Mary L. Theis (decedent-wife) died June 29, 1976, in St. Petersburg, Fla. Her husband, Charles Fred Theis (decedent-husband), died April 18, 1977, also in St. Petersburg.

The decedents owned several parcels of real property in Pinellas County, Fla., as tenants by the entirety. On November 8, 1974, the decedents made gifts of remainder interests in two separate parcels of land, lots 7 and 8, to their children, Laura Jean Watson and Guy William Theis. Laura received the interest in lot 8, and Guy received the interest in lot 7. The decedents retained a life estate in each parcel.

A warranty deed was executed on November 8, 1974, granting Laura and her spouse, Ronald W. Watson (hereinafter the Watsons) a remainder interest in lot 8. On that same day, a warranty deed was executed granting a remainder interest to Guy in lot 7. Both gifts of remainder interests were reported by the decedents on gift tax returns for the appropriate periods.

On October 2, 1975, a mortgage was executed with respect to lot 8. The decedents and the Watsons acted as mortgagors. A promissory note was also executed at that time, signed only by

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect at the time of the decedents' deaths (June 29, 1976, for Mary L. Theis, and Apr. 18, 1977, for Charles F. Theis).

[2] All Rule references are to the Tax Court Rules of Practice and Procedure. All references to the "estates" are to the estates of Charles F. Theis and Mary L. Theis.

the Watsons. St. Petersburg Federal Savings & Loan Association acted as mortgagee. The mortgage proceeds were used to construct a second story apartment above an existing building on lot 8. The apartment has been continuously occupied by the Watsons since its construction.

On December 14, 1976, a mortgage was executed with respect to lot 7 with decedent-husband, along with Guy and his spouse, acting as mortgagors. First Gulf Beach Bank & Trust Co. of St. Petersburg acted as mortgagee. A promissory note for $30,000 was also executed at that time, signed by decedent-husband, along with Guy and Guy's spouse. The decedent-husband received no consideration for signing the note and did so merely to facilitate his son's approval for the loan. The mortgage proceeds were invested in a business owned solely by Guy and his spouse. Upon completion of the mortgage payments, a certificate of satisfaction of the mortgage was issued, naming the decedent-husband as a party.

Federal estate tax returns were timely filed on behalf of each of the decedent's estates.

The balances of the mortgages recorded against the respective parcels at the dates of death were as follows:

| Date of Death | Decedent | Encumbered parcel | | Balance on mortgages |
|---|---|---|---|---|
| 6/29/76 | Mary L. Theis | Lot 8 | | $30,878 |
| 6/29/76 | Mary L. Theis | Lot 7 | | none[1] |
| | | | Total | 30,878 |
| 4/18/77 | Charles Fred Theis | Lot 8 | | 30,368 |
| 4/18/77 | Charles Fred Theis | Lot 7 | | 29,363 |
| | | | Total | 59,731 |

[1] Since Mary died before this property was encumbered, she was not a party to the transaction.

Although neither decedent's Federal estate tax return included the fair market value of lots 7 and 8, a deduction was claimed therein for the balances due on the mortgages as set forth above. However, no claim was ever presented against the decedents' estates regarding the mortgages.

Since the decedents transferred property retaining a life estate therein, the parties agree that the gross estates should be increased by the value of the two parcels. Sec. 2036(a).[3] The

---

[3] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer

parties have stipulated that the amount to be included in each estate is $45,000 (which was determined by taking one-half the combined date-of-death value of the properties).[4]

The parties disagree, however, as to the proper treatment of the mortgages on each property. Petitioners first contend that the decedents are entitled to deduct the balances due on the mortgages because the mortgages represent valid claims against the estates. Alternatively, petitioners contend that the balances due on the mortgages are deductible because they represent unpaid indebtedness of the estates.

To the contrary, respondent contends that the mortgages do not represent debts of the decedents. Respondent states that the banks did not expect or ask for payments from the decedents. Alternatively, respondent argues that, if deductions are allowed, they should be offset by the decedents' rights of contribution against their children.

To be deductible by the decedents' estates, the mortgages must meet the requirements of section 2053. Under section 2053(a),[5] the value of the taxable estate is determined by deducting from the gross estate certain items allowable by the law of the jurisdiction where the estate is administered.

The parties agree that under section 2053(a), in order for the decedents' estates to obtain deductions for the mortgages, they

---

(except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he was retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

[4]This amount does not include the value presumably added to lot 8 by the construction of the second-story addition to the existing building. See p. 743 *supra*.

[5]Sec. 2053 provides as follows:

SEC. 2053(a). GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

\*      \*      \*      \*      \*      \*      \*

(3) for claims against the estate, and

(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

must qualify for deductions under either section 2053(a)(3), as claims against the estates, or section 2053(a)(4), as indebtedness of the estates.

## I. Claims Against the Estates

For the balances due on the mortgages to be deductible under section 2053(a)(3) as claims against the estates, the mortgages must represent personal liabilities of the decedents. Sec. 20.2053–4, Estate Tax Regs.[6] The regulation also provides that only claims enforceable against the decedents' estates may be deducted.

We must look to State law to determine the decedents' liabilities on the mortgages. Sec. 2053. The laws of Florida are applicable because the land was situated there. The procedure followed by Florida courts in determining liability is to review the circumstances surrounding the execution of the mortgages by examining the instruments, the situations of the parties involved, and the object of the transactions. *Jackson v. Parker*, 153 Fla. 622, 15 So. 2d 451 (1943); *Tampa Federal Savings & Loan Association v. Aeon, Inc.*, 403 So. 2d 1002 (Fla. Dist. Ct. App. 1981); *Boyette v. Carden*, 347 So. 2d 759 (Fla. Dist. Ct. App. 1977).

*Lot 8*

A remainder interest in lot 8 was given to the Watsons. A mortgage was executed with respect to lot 8 by the decedents and the Watsons. A promissory note was also executed, but it was signed only by the Watsons.

Petitioners contend that these factors indicate that the decedents were personally liable for the mortgage on lot 8 and, accordingly, they should be allowed to deduct the balance due on the mortgage.

---

[6]Sec. 20.2053–4, Estate Tax Regs., provides, in pertinent part, as follows:

"The amounts that may be deducted as claims against a decedent's estate are such only as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death. * * * Only claims enforceable against the decedent's estate may be deducted. Except as otherwise provided in sec. 20.2053–5 with respect to pledges or subscriptions, section 2053(c)(1)(A) provides that the allowance of a deduction for a claim founded upon a promise or agreement is limited to the extent that the liability was contracted bona fide and for an adequate and full consideration in money or money's worth. See sec. 20.2043–1. * * * "

Respondent, however, contends that the decedents were not personally liable for the mortgage on lot 8. He points out that the decedents did not sign the promissory note and that the money was utilized solely to improve· a dwelling that the Watsons have continuously occupied. There is also no indication that the decedents ever made any of the payments on the mortgages or that the mortgagor ever looked to the decedents for payment.

We agree with respondent. For the decedents to be liable on the note, their signature is required. Fla. Stat. Ann. sec. 673.3–401 (1966).[7] Here the decedents did not sign the note in question. Therefore, they are not liable for its payment.

## Lot 7

A remainder interest in lot 7 was given to the decedents' son, Guy, with the decedents retaining a life estate. A mortgage was executed on this property by the decedent-husband, and by Guy and his spouse. The decedent-wife was deceased at that time and thus was not a party to the transaction. A promissory note for $31,000 representing the mortgage principal was also executed. This note was signed by Guy, his spouse, and by the decedent-husband.

Petitioners contend that since the decedent-husband signed the note, he was personally liable (along with Guy and his spouse) for the payment of the mortgage. In support thereof the petitioners point to the fact that a certificate of satisfaction of the mortgage was issued when payment was completed, naming the decedent-husband as a party.

Respondent contends that, according to Florida law, the decedent-husband was a mere accommodation party.[8] Respondent asserts that, as a mere accommodation party, the decedent was not personally liable for the mortgage.

---

[7]673.3–401 Signature

(1) No person is liable on an instrument unless his signature appears thereon.

(2) A signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature.

[8]Fla. Stat. Ann. sec. 673.3–415 (1966), provides:

(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

The decedent-husband received no consideration for signing the note or the mortgage. The proceeds were never subject to his disposal, nor did he receive any benefit from them. This fact, plus a review of the entire record, leads us to conclude that he was merely lending his name to the transaction to ensure that his son received the loan. See, e.g., *Ebeling v. Lowry*, 203 So. 2d 506 (Fla. Dist. Ct. App. 1967). Therefore, the decedent-husband merely signed as an accommodation party.

Petitioners contend, in the alternative, that under Florida law an accommodation party can be jointly liable with the maker of a note, and hence personally liable. Petitioners rely on *Ebeling v. Lowry, supra*, and *Furlong v. Leybourne*, 138 So. 2d 352 (Fla. Dist. Ct. App. 1962). However, petitioners' reliance on these cases is misplaced. These cases are distinguishable because they involve claims that were actually presented against the accommodation parties involved. In the instant cases, no claims were ever presented against the decedents' estates for the balances due on the mortgages. Instead, the liabilities here are correctly classified as unmatured, potential claims. *Estate of Fawcett v. Commissioner*, 64 T.C. 889 (1975); *Estate of Courtney v. Commissioner*, 62 T.C. 317 (1974). In *Courtney*, the decedent and his wife were jointly liable on a mortgage taken out on their property. The property was deeded to their son, subject to the mortgage. After the decedent's death, his wife continued to make payments on the mortgage. In reaching our decision, we noted that the mortgagees could have enforced payment of their note against the decedent's estate, his wife, or the property. However, no claim was ever presented against the decedent's estate. We agreed with the taxpayer that while a claim is deductible in full when a decedent is personally liable on a mortgage, unmatured potential claims are treated differently. In *Estate of Courtney v. Commissioner, supra*, we stated:

an estate may be fully liable to pay an amount due and owing by the decedent at his date of death, [but] if such a liability is thereafter waived by the claimant and does not thereafter exist, no deduction may be taken. * * * [62 T.C. at 322.]

See also *Estate of Fawcett v. Commissioner, supra*; *Estate of Hagmann v. Commissioner*, 60 T.C. 465 (1973), affd. per curiam 492 F.2d 796 (5th Cir. 1974); *Estate of DuVal v. Commissioner*, 4 T.C. 722 (1945), affd. 152 F.2d 103 (9th Cir. 1945).

Here no claim was ever presented against the decedent-husband's estate, and, therefore, the mortgage represented an unmatured, potential claim against the estate that never became a personal liability. Accordingly, the indebtedness on lot 7 is not deductible by the decedent-husband's estate.

## II. Mortgage Indebtedness

For the balances due on the mortgages to be deductible under section 2053(a)(4), the mortgages must represent an indebtedness on the property where the value of the decedents' interest therein is included in the gross estate undiminished by the mortgages. The mortgages must also meet the limitations of section 2053(c),[9] which requires that the mortgages must have been contracted bona fide and for full and adequate consideration.

Assuming arguendo that the limitations of section 2053(c)(1) are met, we cannot agree with petitioners that the mortgages qualify for deduction under section 2053(a)(4).

Section 2053(a)(4) was enacted merely to clarify existing law, as embodied in present section 2053(a)(3), in regard to deductions from the gross estate. H. Rept. 708, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 457, 491; S. Rept. 665, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 496, 533.[10] We have disallowed the deduction under section 2053(a)(3). To allow a deduction here would be to go beyond the intent of Congress

---

[9]Sec. 2053(c) provides:

SEC. 2053 (c). LIMITATIONS.—

(1) LIMITATIONS APPLICABLE TO SUBSECTIONS (a) AND (b).—

(A) CONSIDERATION FOR CLAIMS.—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; except that in any case in which any such claim is founded on a promise or agreement of the decedent to make a contribution or gift to or for the use of any donee described in section 2055 for the purposes specified therein, the deduction for such claims shall not be so limited, but shall be limited to the extent that it would be allowable as a deduction under section 2055 if such promise or agreement constituted a bequest.

[10]Those House and Senate reports provide as follows:

"This amendment, with one exception, merely clarifies the existing law so far as it relates to an important group of deductions allowable in computing the net estate subject to estate tax. The principal changes made are:

"(1) A more definite statement that, in order for a mortgage to be deducted, the full value of the mortgaged property must be included in the gross estate. This change is merely for clarification."

that section 2053(a)(4) was enacted merely for clarification purposes.

Section 2053(a)(4) provides that deductions are allowed:

for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

In our view, Congress intended to provide guidance in situations where an individual has borne the burden of financing his own property. We do not think Congress intended for section 2053(a)(4) to apply in situations where a decedent is secondarily liable or, as in these cases, where the decedent is an accommodation party. Cf. *Estate of Fawcett v. Commissioner*, 64 T.C. 889 (1975) (decedent, primarily liable on note, was allowed a deduction to the extent that the underlying property was included in the gross estate).

For us to hold that section 2053(a)(4) creates a deduction for the estates in the present case would create a possibility for considerable abuse. Any individual who was secondarily liable on a mortgage on property in which the individual possessed an interest at death, or who acted as an accommodation party, could obtain a deduction from his gross estate without bearing the burden of meeting any of the mortgage payments. This would create an undeserved windfall for the taxpayer. We think Congress clearly did not intend such a result and, consequently, no deduction should be allowed under section 2053(a)(4).

However, petitioners urge us to consider section 20.2053-7, Estate Tax Regs.[11] They contend that if the decedents are not liable on the mortgages, then the amount to be included in each decedent's estate is the value of the equity of redemption

---

[11]That regulation provides as follows:

Sec. 20.2053-7. Deduction for Unpaid Mortgages.

A deduction is allowed from a decedent's gross estate of the full unpaid amount of a mortgage upon, or of any other indebtedness in respect of, any property of the gross estate, including interest which had accrued thereon to the date of death, provided the value of the property, undiminished by the amount of the mortgage or indebtedness, is included in the value of the gross estate. If the decedent's estate is liable for the amount of the mortgage or indebtedness, the full value of the property subject to the mortgage or indebtedness must be included as part of the value of the gross estate; the amount of the mortgage or indebtedness being in such case allowed as a deduction. But if the decedent's estate is not so liable, only the value of the equity of redemption (or the value of the property, less the mortgage or indebtedness) need be returned as part of the value of the gross estate. * * *

(the value of the property, less the mortgage), in accord with section 20.2053–7, Estate Tax Regs.

A literal reading of section 20.2053–7, Estate Tax Regs., would require us to agree with petitioners. But we do not find that regulation applicable here. Section 20.2053–7, Estate Tax Regs., like section 2053(a)(4), was intended to cover situations involving the liability for mortgages on a decedent's own property. *Estate of Johnstone v. Commissioner*, 19 T.C. 44 (1952).[12] In the instant cases, the property was mortgaged *after* the decedents transferred remainder interests. To adopt a literal reading of section 20.2053–7, Estate Tax Regs., would be to go against the purpose and intent of section 2036(a) and section 2053(a)(4). For example, suppose an individual gifts a remainder interest in property to his children and retains a life estate, the children could then mortgage the property (without having their father cosign the mortgage) or could sell the property to a third party who could mortgage it. If we agreed with petitioners' contention, the father would have to include only the net equity of redemption value (i.e., subtract the mortgages) in his gross estate. This is wholly contradictory to the express language of section 2036(a). We cannot agree with petitioners because we do not think that Congress intended to allow deductions to estates for debts that the decedents would not be required to pay.[13]

The record here does not indicate that the decedents have made, or will have to make, payments on the mortgage notes.

---

[12]We note that the ultimate conclusion in *Johnstone* was contrary to this result because the decedent retained an interest in the property, as a tenant in common, at death. However, despite its contrary conclusion, this Court's reasoning in *Johnstone* supports our result in this case.

[13]Petitioners' reliance on our opinion in *Estate of Scofield v. Commissioner*, T.C. Memo. 1980–470, for the proposition that the bank's liens were not extinguishable and therefore are deductible under sec. 2053 is misplaced.

Petitioners misstate the result of that case. In *Scofield*, a father executed a will in which he bequeathed stock to his son. The son borrowed money from a bank with the father acting as guarantor and pledging his stock as security. When the father died, the estate attempted to deduct the principal amount of the lien from the value of the gross estate.

The lien was not deductible in full, as petitioners in the present cases assert, but rather was offset by the value of the estate's right of subrogation against the son. Also, the case is distinguishable in that the Commissioner, unlike the present cases, conceded that the liens were deductible under sec. 20.2053–7, Estate Tax Regs., and the taxpayer conceded that the amount of the deduction was to be offset by the value of the estate's right of subrogation against the son. Indeed, when viewed in light of its differing facts and concessions, we read *Scofield* as supportive of our conclusions herein. See note 14 *infra*.

The decedents' children appear to be solvent. In addition, no claims have ever been presented against the estates for payment. As noted previously, there are no claims against the decedents' estates for payment and no deductions are allowed under section 2053(a)(3). *Estate of Courtney v. Commissioner,* 62 T.C. 317 (1974).

We think the same result should follow in the instant cases where the decedents were not primarily liable on the mortgages and will not have to bear the burden of repayment. Section 20.2053–7, Estate Tax Regs., is not applicable to reduce petitioners' inclusion in their gross estates. Hence, we hold that the proper amount to be included in each decedent's estate is $45,000, which represents his or her share of the entire value of the properties (which has been stipulated to be $90,000).[14]

Accordingly, we conclude that the balances due on the mortgages are not deductible under either section 2053(a)(3) or section 2053(a)(4), and that the exclusion provided by section 20.2053–7, Estate Tax Regs., is not applicable.

*Decisions will be entered under Rule 155.*

Reviewed by the Court.

---

[14]Moreover, even if sec. 20.2053–7, Estate Tax Regs., were applicable here, it would not aid petitioners. We have held that the decedents were not primarily liable on the mortgages. Accordingly, if we applied the regulation to the instant cases, it would require that the only value that need be returned in the decedents' gross estates is the equity of redemption value. However, this amount would then be offset by the decedents' right of contribution against their children. In other words, the decedents' recovery from their children would reduce the estates' exclusions. *Estate of Shedd v. Commissioner,* 37 T.C. 394 (1961), affd. 320 F.2d 638 (9th Cir. 1963); *Du Val's Estate v. Commissioner,* 152 F.2d 103 (9th Cir. 1945), affg. 4 T.C. 722 (1945). See also R. Stephens, G. Maxfield & S. Lind, Federal Estate and Gift Taxation 5.03 [6.] (1978). Here, the decedents, as accommodation parties on the mortgages, would have a right of recourse against their children for primary payment of the indebtedness. See Fla. Stat. Ann. sec. 673.3–415(5) (1966); *Beardmore v. Abbott,* 218 So. 2d 807 (Fla. Dist. Ct. App. 1969); *Central Trust Co. v. Manly,* 100 F.2d 992 (5th Cir. 1939). Accordingly, as in *Estate of Shedd,* and *Du Val's Estate,* the decedents' right of contribution would be used to offset any deduction (or exclusion) that the decedents would be entitled to. In the present cases, the value of the property greatly exceeds the principal value of the mortgages. Also, the children appear solvent. Hence, applying sec. 20.2053–7, Estate Tax Regs., would require us to hold that the fair market value of the offset (or right of contribution) is equal to the value of the mortgages. Since the exclusion would be offset by this right of contribution, the value of the property includable in the decedents' gross estates would be each decedent's share of the entire value of the property, or $45,000 (per agreement by the parties).

Nims, *J.*, dissenting: In my view, the facts in these cases bring them within section 20.2053–7, Estate Tax Regs., so as to limit the includable value of the respective properties to the equity of redemption thereof. In *Commissioner v. Wragg*, 141 F.2d 638 (1st Cir. 1944), the Circuit Court pointedly observed that the Commissioner may *not* argue in situations analogous to the one before the Court "that the deductions taken cannot be allowed because the consideration for the claims against the estate did not flow to the decedent."

The majority perceives an unfair abuse situation were the above regulation to be applied according to its actual terms. I perceive a countervailing unfair result where the full fair market value of property is required to be included in the gross estate by virtue of section 2036 without any recognition being given to the existence of an encumbrance, for whatever reason placed upon the property, which indisputably affects the value of that property. I feel the Court will totally lose its sense of direction in this area if it persists in making ad hoc exceptions to the clear effect of the regulation. In my judgment, Judge Whitaker, in his dissenting opinion, has correctly analyzed the law as applied to the facts of this case.

WHITAKER and COHEN, *JJ.*, agree with this dissent.

WHITAKER, *J.*, dissenting: I respectfully dissent. The estate tax returns of the two decedents presented two issues, whether the value of certain lots must be included in the gross estate pursuant to section 2036 and, if so, whether the outstanding mortgage debt on each lot should be taken into account under section 2053(a)(3) or (4). The parties stipulated, as they must, that section 2036 requires lots 7 and 8 to be included in the taxable estate. Thus, the issue before us is simply whether the lots should be valued on a gross or net basis. By reason of what I consider to be a materially erroneous stipulation as to value which the majority chooses to accept, I would, on this record, reach the same result as the majority as to lot 8, but via a different route. There can be no disagreement as to lot 7 insofar as it affects decedent-wife. Thus, my dissent is primarily directed to the result which the Court reaches as to lot 7 in decedent-husband's estate. Nevertheless, it is desirable to

discuss lot 8 first since it more pointedly illustrates the majority's erroneous reasoning.

## *Lot 8*

Lot 8, prior to the mortgage, had a one-story structure on it. The mortgage loan proceeds of approximately $31,000 were used by the remainderman, decedent's daughter, to construct an addition to that building for her use.[1] Section 2036 does not exclude the value of improvements, whether constructed by the life tenant or the remainderman.[2] Thus, the gross estate of each decedent should have been increased by the value of lot 8 as improved.[3] However, the gross estate should be increased only by the net value of lot 8 as improved.

The majority recognizes that section 20.2053-7, Estate Tax Regs.,[4] literally requires that the outstanding balances of the mortgages as of the respective dates of death of the decedents should be taken into account and only the net value included in the estate. To the extent here pertinent, that regulation provides:

But if the decedent's estate is not so liable [for the amount of the mortgage indebtedness], only the value of the equity of redemption (or the value of the property, less the mortgage or indebtedness) need be returned as part of the value of the gross estate. * * * [Sec. 20.2053-7, Estate Tax Regs.]

With respect to lot 8, this result clearly produces the only correct economic result. The mortgage proceeds, being used to construct a second story addition, benefited the life tenants. We are entitled to assume that the value of lot 8 was substantially increased by the expenditure. It would be unconscionable to include the enhanced value in the gross estates of each decedent without taking into account the outstanding balance of the mortgage indebtedness on lot 8,

---

[1] The fact that the life tenants allowed the daughter to occupy the structure is irrelevant. The improvements enhanced the potential income value of the property to the holders of the life estates.

[2] See and compare sec. 2035 and sec. 20.2035-1(e), Estate Tax Regs.

[3] The stipulated value erroneously excludes the value of the improvements. See note 4 of the majority opinion.

[4] Since neither decedent incurred any personal liability, sec. 2053(a)(3) can have no application. Sec. 2053(a)(4) by contrast includes "unpaid mortgages on" property of a decedent.

irrespective of the lack of personal liability on the part of either decedent.[5] The property was worth no more than its net value.

Since the parties neglected to stipulate as to the value of lot 8 as improved, I would assume that the enhanced value of the structure is exactly equivalent to the outstanding balance of the mortgage. The value of the "equity of redemption" that is to be included in the gross estate under the regulations would thus equal the stipulated value. For this reason, I would reach the same result as the majority as to lot 8.[6]

## Lot 7

Lot 7, insofar as it affects decedent-husband, presents a different factual situation.[7] In this instance the majority has, in my judgment, reached an erroneous result, apparently motivated by what the majority sees as an abuse.

The majority correctly concludes that the balances due on the mortgages do not qualify as claims against the estate under section 2053(a)(3). Neither decedent had any personal liability for the mortgage indebtedness against lot 8, and Mrs. Theis had no personal liability for the mortgage indebtedness on lot 7. However, Mr. Theis signed the mortgage note and thereby incurred personal liability, even though he was only an accommodation party.[8] If the mortgage had become delinquent during Mr. Theis' lifetime, the unpaid balance could have been collected from him. At the date of death, this liability was, as the majority points out, an unmatured and potential claim only, since the note was not in default. At most, only a contingent claim could have been filed by the

---

[5]The record does not indicate whether the daughter paid rent to her parents. Since it is indicated that she and her husband made the mortgage payments, not the decedents, I infer that no rent was paid. On this assumption, the value of the life tenancies was increased without any out-of-pocket cost to the life tenants. Questions as to a right of contribution are fully treated *infra*.

[6]Alternatively, the record could be reopened for receipt of evidence as to the value of the lot as improved.

[7]Since the mortgage was not placed on lot 7 until after the death of Mary L. Theis, her estate should clearly be increased by one-half of the value of lot 7, without reference to the post-death mortgage, which is the result reached by the majority.

[8]While clearly Mr. Theis was an accommodation party with respect to the debt on lot 7, that may not have been true as to either decedent with respect to lot 8, since the loan added value to the life estates. I do not believe that this question has any relevancy, however.

mortgagee against the estate. But if the mortgage had been in default, and provided a proper claim had been filed against the estate,[9] the mortgagee could have recovered the balance due from its assets. According to the stipulation, no claim was filed against the estate of Mr. Theis by the lot 7 mortgagee. Hence, upon the expiration of the limitation period, the unmatured, potential claim became unenforceable against the estate. This extinguished the direct or personal liability of the decedent-husband's estate. The amount of the mortgage note could not qualify as a claim under section 2053(a)(3). See sec. 20.2053–4, Estate Tax Regs.

Section 2053(a)(4) is a different issue. This section authorizes a deduction for "unpaid mortgages on" property, the value of which is included in the gross estate. The Florida nonclaim statute excludes from its application any lien on the property of the decedent.[10] If this mortgage had become delinquent during the lifetime of Mr. Theis, there would have been nothing, based upon the stipulated facts, that would have inhibited the mortgagee from proceeding to foreclose on the entire fee interest in the property, thereby cutting off Mr. Theis' life estate. Upon his death, the mortgage remained as a valid lien upon the fee interest, but the fee interest was no longer divided into a life estate and a remainder. The two merged upon Mr. Theis' death and the remainderman, the son, at that moment in time acquired a full, fee simple interest, subject to the outstanding mortgage.[11]

Congress directed in section 2036 that the gross estate include the value of property (the value of the fee simple interest) when a decedent holds a life estate. But how can that value be in excess of the net fair market value? Respondent's regulations (sec. 20.2053–7, Estate Tax Regs.) literally apply to

---

[9]Florida has enacted a typical nonclaim statute, largely patterned on the uniform act, which provides that no claim against a decedent shall be binding on the estate unless filed within 3 months after the first publication of the notice of administration. Compare sec. 3–804 of the Unif. Probate Code, 8 U.L.A.

[10]Fla. Stat. Ann. sec. 733.702(3) (West 1976), provides in part:

(3) Nothing in this section affects or prevents:

(a) A proceeding to enforce any mortgage, security interest, or other lien on property of the decedent.

[11]Of course, foreclosure after the death of either life tenant would not affect any asset of the probate estate of that life tenant since the estate had no further interest of any kind in lots 7 and 8.

this case and would limit the amount to be included in the decedents' estates to the net value of the property, the value less the outstanding mortgage indebtedness. The case of *Estate of Johnstone v. Commissioner*, 19 T.C. 44 (1952), is cited apparently as support for the majority's position, but an examination of that case reveals that the majority is in fact following the position of the dissent in *Johnstone*. Without citation of authority, the majority chooses to narrow the plain meaning of respondent's regulations, constructing a totally unrealistic hypothetical as justification.

The majority hypothesizes a situation in which the owner of a remainder interest obtains a loan on the security of the remainder interest alone. It is inconceivable that a commercial lender such as a bank or savings and loan association (the lenders here) would make a loan on the security of a remainder interest in real property during the lifetime of the life tenant. Such an interest is illiquid and, in normal circumstances, unsalable. This fact undoubtedly causes the two lenders in this case to require the holders of the life estates to join in the mortgages so that the entire fee in each lot could be subjected to the liens as security for repayment of the debts. The majority's hypothetical example could not come to pass except in some intrafamily, non-arm's-length transaction.

In note 13 of the majority opinion, it is suggested that Estate of *Scofield v. Commissioner*, T.C. Memo. 1980–470, is also supportive of the majority's conclusions. In note 14, the majority argues that each of the decedents had a right of contribution against their children which apparently would be an asset of their estates and would dollar for dollar offset the mortgage lien even if section 20.2053–7, Estate Tax Regs., were applicable. It may well be true that if the mortgages had been foreclosed during the lifetimes of the decedents, the decedents would have had under Florida law a right of contribution from the parties primarily liable for the repayment of the mortgage indebtedness, i.e., their children. However, a right of contribution such as this arises only at that point in time when the accommodation party has suffered a loss. Until there is a loss, i.e., a payment to the mortgage lender or a loss of the life estate through foreclosure, there is no basis for a contribution. Any right of contribution prior to that time would at most be

inchoate. However, neither estate could have suffered any loss under these facts. Upon the death of each decedent, the life estate terminated. Hence, foreclosure of the mortgage lien would not deprive either estate of any value. Upon the running of the nonclaim statutory period against the one estate and from the date of death of the other decedent, there was no possible loss due to personal liability of the estate. Hence, no possibility of a right of contribution could have arisen in this case. The Florida cases cited by the majority simply are inapplicable under the facts before us. In addition, as to lot 8, it is not clear that the decedents were accommodation parties only.

Apparently, the majority considers lot 7 to be an abuse situation since the mortgage proceeds did not directly or indirectly increase the decedent-husband's gross estate. Under my analysis of lot 8, this perceived abuse would not be present. But I find no justification in either the Code or the regulations for a differing analysis, dependent upon whether the mortgage proceeds are used for the benefit of the mortgaged property. In any event, whether or not there is some possibility of abuse is not the issue before this Court. If there is an abuse, Congress has not seen fit to correct it and it is not up to this Court to attempt to do so.

For the reasons indicated, only the net value of each lot as of the date of death of each decedent should be included in the gross estate of each decedent. The majority's treatment of lot 7 with respect to the estate of Mr. Theis is in error.

NIMS and COHEN, *JJ.*, agree with this dissent.