WALTER J. ZABLE AND BETTY C. ZABLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zable v. Commissioner
Docket No. 33174-87
United States Tax Court
T.C. Memo 1990-55; 1990 Tax Ct. Memo LEXIS 55; 58 T.C.M. (CCH) 1330; T.C.M. (RIA) 90055; February 7, 1990
William C. Stewart, Jr., for the petitioners. Catherine M. Brady, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated July 15, 1987, respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax Year
Deficiency
[1] Sec. 6661(a) Sec. 6653(a)(1)
Sec. 6653(a)(2)
1983
$ 79,167.00
$ 19,791.75
$ 3,985.35
50 percent of
the interest
due on $ 79,167
1984
72,000.00
18,000.00  3,600.00  50 percent of
the interest
due on $ 72,000
*56 The issues for decision are: (1) The fair market value of real property which petitioners contributed and claimed deductions for under section 170(a) in taxable years 1983 and 1984; (2) Whether petitioners, in overstating the fair market value of the contributed real property, were negligent or intentionally disregarded rules and regulations as provided in sections 6653(a)(1) and 6653(a)(2); and (3) Whether petitioners are liable for additions to tax under section 6661 due to a substantial understatement of taxes. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Rancho Santa Fe, California, when they filed their petition in this case. In 1972, petitioners purchased 997 acres of undeveloped land in Santa Cruz County, Arizona (hereinafter referred to as "the subject property"). Santa Cruz County, which in 1982 had a population *57 of 22,000, is located in southern Arizona and is bordered by Mexico to the south. The Subject Property
Petitioners have never received an offer to buy the property. The subject property is zoned GR, or one home per 5 acres, in accordance with the Santa Cruz Zoning Ordinance. The highest and best use of the subject property during the years at issue was low density residential development. However, because of the various factors discussed below, the subject property would be unattractive to a purchaser who wanted to develop immediately. Parts of the subject property are in flood-prone areas. There is no electricity or water available to the subject property, limiting its development potential. Electricity and water sufficient to support low density residential development (one residence per 5 acres) could be provided to the subject property by the local utility company, but only after access problems are sufficiently resolved to allow Santa Cruz County to permit its development. Public access to the subject property as of the valuation dates was not suitable to allow its development as a low density residential subdivision unless a bridge was constructed across the *58 Santa Cruz river, eight parcels of private land were condemned to create a public right of way, and irrevocable permission was obtained from the Southern Pacific Railroad to allow public access across its tracks to the west of the subject property. In addition, the two roads which provide limited access to the subject property would have to be expanded in order for Santa Cruz County to allow development. The desirability of the subject property as the object of residential development is also limited by the proximity of Rio Rico. Rio Rico is a planned community consisting of 55,567 acres which border the subject property to the west and south. Rio Rico has thousands of lots which have been surveyed, staked and plotted available for immediate development. Rio Rico also has in place a framework for providing water to these lots. In the foreseeable future Rio Rico, along with other local developments, will satisfy demand for residential development in Santa Cruz County, thus discouraging investment in the subject property. Charitable Contributions
Prior to 1983, petitioners contributed undivided fractional interests in the subject property totaling 67.2466 percent to *59 various organizations. As of the beginning of 1983, petitioners' remaining undivided interest in the property was 32.7534 percent of the whole. During taxable years 1983 and 1984, petitioners made the following charitable contributions of undivided fractional interests in the subject property: Contribution
Date of
as a Fraction of
Recipient
Contribution
Original 997 Acres
University of
12-21-83
4.1667 percent  San Diego
San Diego Hall
of Champions
12-21-83
4.1667 percent  College of
William & Mary
in Va., Inc.
12-24-84
2.00 percent  University of
San Diego
12-24-84
2.00 percent  National Football
Foundation and Hall
of Fame
12-24-84
2.00 percent  On their Federal income tax returns for taxable years 1983 and 1984, petitioners claimed the following charitable contribution deductions under section 170(a) with respect to the contributions: Taxable
Claimed Charitable
Value Per Acre
Year
Recipient
Contribution Deduction
(Returns As Amended)
1983
University of
San Diego
$ 125,000
$ 3,000
1983
San Diego Hall
of Champions
125,000  3,000  1984
College of William
& Mary in Va., Inc.
70,000   3,500  1984
University of
San Diego
70,000   3,500  1984
National Football
Foundation and
Hall of Fame
70,000   3,500  *60 In his notice of deficiency, respondent determined that the fair market value of the subject property in both 1983 and 1984 was $ 1,100 per acre. The fair market value of the property per acre as determined by each party's expert witness prior to any reduction for fractional interest discount is as follows: Petitioner's
Respondent's
Year
Expert
Expert
1983
$ 2,000
$ 1,100
1984
2,500  1,100  Respondent determined that the fair market value of the contributions should be discounted by 10 percent because the gifts were of small fractional interests. Arizona allows landowners to petition a state court to partition real property held as undivided fractional interests. Such a proceeding would take approximately one year and would cost each beneficiary $ 5,000 in legal fees. Preparation of Income Tax Returns
Petitioners did not have the subject property appraised prior to filing their 1983 and 1984 Federal income tax returns. Petitioners' returns and amended returns were prepared by their certified public accountant, who resides and practices in San Diego, California. In ascertaining the value of the subject property for purposes *61 of petitioners' claimed charitable contribution deductions the accountant relied on petitioners' statement that the fair market value was $ 3,000 per acre in 1983, and $ 5,000 per acre in 1984. The accountant was aware when he prepared petitioners' 1983 and 1984 returns that petitioners had settled a previous dispute with respondent over the fair market value of the property in 1977 and 1978 at $ 1,100 per acre in both years. Petitioners later had the subject property appraised as of November 5, 1986 (hereinafter "the 1986 report"). The appraiser concluded that its fair market value as of that date was $ 3,700 per acre. Petitioners then amended their 1984 Federal income tax return to reflect a fair market value of $ 3,500 per acre as of the date of contribution. Petitioners' 1983 Federal income tax return was never amended as to the fair market value of the subject property. OPINION Fair Market Value of the Subject Property
Where a charitable contribution is made of property, rather than money, the amount of the contribution is the fair market value of the contributed property *62 at the time of the contribution. Sec. 1.170A-1(c)(1), Income Tax Regs; Goldman v. Commissioner, 46 T.C. 136, 137 (1966), affd. 388 F.2d 476 (6th Cir. 1967). Fair market value is defined as the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of relevant facts. Sec. 1.170A-1(c)(2), Income Tax Regs. Respondent's determination as to the fair market value of the property is presumptively correct, and petitioners bear the burden of proving a higher value. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Petitioners contributed undivided fractional interests in real property. Real estate valuation, and the question of fractional interest discount, is a question of fact to be resolved on the basis of the entire record. Estate of Fawcett v. Commissioner, 64 T.C. 889, 898 (1975); Estate of Campanari v. Commissioner, 5 T.C. 488 (1945). *63 It is the fair market value of these fractional interests, and not the fair market value of the property as a whole, which must ultimately be determined. See Propstra v. United States, 680 F.2d 1248, 1251 (9th Cir. 1982). Respondent determined, and petitioners' expert did not dispute, that a 10 percent discount in the fair market value of the subject property is appropriate because the contributions were in the form of small undivided fractional interests. We agree that such a discount is warranted. Both parties introduced detailed appraisal reports compiled by qualified appraisers who are familiar with property values in southern Arizona. We must weigh expert opinion evidence in light of the demonstrated qualifications of the expert and all other credible evidence. Estate of Christ v. Commissioner, 480 F.2d 171, 174 (9th Cir. 1973), affg. 54 T.C. 493 (1970). However, we are not bound by the opinion of any expert witness when that opinion is contrary to our judgment. Kries' Estate v. Commissioner, 227 F.2d 753, 755 (6th Cir. 1955). While we may choose to accept the opinion of one expert in its entirety, Buffalo Tool & Die Mfg. Co. v. Commissioner, 74 T.C. 441, 452 (1980), *64 we may also be selective in the use of any portion of such an opinion. Parker v. Commissioner, 86 T.C. 547, 562 (1986). Both appraisers used the comparable sales method in arriving at values for the property. The "comparable sales" method functions by: (1) locating properties as physically similar as possible to the subject property which (2) have been sold on the open market in noncollusive, nonforced sales for cash or cash equivalent, within (3) a reasonable time of the date for which a value of the subject property is desired. Once these properties are located, those features of the subject property which are most pertinent to its value are compared to those same features on the comparable properties. Since no two sales and no two properties can be identical, the value of those features of the comparable properties which are relevant to the value of the subject property are adjusted until they are of a quality equivalent to those of the subject property. This Court has found the comparable sales valuation method to be a reasonable one and has used it in the past. *65 Wolfsen Land & Cattle Co. v. Commissioner, 72 T.C. 1, 19 (1979). We have compared the substance and reasoning of both appraisal reports, as well as the testimony at trial of the appraisers, and find respondent's appraisal report generally superior. Because petitioners' appraiser fails to explain the substantial appreciation indicated by his findings, and because in arriving at a fair market value he places greatest weight on a sale which is not sufficiently comparable to the subject property, we find that the appraisal offered by respondent is a more reliable indication of the subject property's fair market value.
Petitioners' Appraisal Report
Petitioners' expert appraised the subject property in 1986 and again in 1988. In the 1986 appraisal, petitioners' expert reported that the value of the subject property as of November 5, 1986, was $ 3,700 per acre. In the 1988 appraisal, petitioners' expert reported that the value of the subject property as of December 31, 1983, was $ 2,000 and as of December 31, 1984, was $ 2,500. In both appraisals petitioners' expert relied on virtually the same comparable sales. Yet, he concludes that from one year to the *66 next the value of the subject property increased by 25 percent, and that over a period of less than 3 years its value increased by 85 percent. At trial, petitioners' expert offered no explanation for this substantial appreciation, and, based on the appraisal reports and testimony of both experts with regard to the slow economic growth in Santa Cruz County during the years in question, we find his conclusions unrealistic and unreliable. We also find that petitioners' expert erred in giving the greatest weight to a sale for $ 5,000 per acre which closed on December 30, 1986 (hereinafter "the 1986 property"). There are several distinctions between the 1986 property, which was suitable for immediate development, and petitioners' property. Included in the price of the 1986 property was the acquisition of an adequate supply of water. Electricity was also available to the 1986 property. In addition, the seller of the 1986 property had filed a preliminary plan for rezoning to a higher density development. The seller of the 1986 property had also acquired public access for its development. Finally, we note that the 1986 property was foreclosed upon prior to its development, indicating *67 the purchaser may have paid an inflated price. In addition to the differences in quality between the 1986 property and the subject property, we also find that a sale taking place 2 years after the last of petitioners' contributions is entitled to less weight where contemporaneous comparable sales are available. Respondent's Valuation
While we find that respondent's report is a better indicator of the fair market value of the subject property than that of petitioners, we note that in none of the comparable sales relied on by respondent did the property sell for less than $ 1,133.68. In addition, there are some indications that the comparable sale on which respondent's expert places the most weight may have been a distress sale. Therefore, while we find respondent's expert to be far more persuasive than petitioners', we do not accept his expert's value of $ 1,100 per acre. Based upon an analysis of all of the valuation evidence introduced through both testimony and documentation, and giving due consideration to our observation at trial of the witnesses for both parties, and after considering their testimony, it is determined that the fair market value of the subject *68 property at the time of both the 1983 and the 1984 contributions was $ 1,500. When reduced by 10 percent because of fractional interest discount, this yields a value of $ 1,350 per acre. Additions to Tax
Negligence or Intentional Disregard of Rules or Regulations
Section 6653(a)(1) provides for an addition to tax of 5 percent of any underpayment if any part of the underpayment is due to negligence or the intentional disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax equal to 50 percent of the interest payable on the deficiency with respect to the portion of the underpayment which is attributable to negligence or intentional disregard of rules or regulations. Negligence under section 6653(a) is the lack of due care or failure to act as a reasonable person would act under the same circumstances where there is a legal duty to act. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proof with respect to additions to tax for negligence. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860 (1982). *69 Section 6653(a) imposes the duty on taxpayers to accurately reflect the fair market value of property relied upon in completing a return. Where such values are unknown or uncertain, the taxpayer must reasonably investigate so as to render an accurate estimate of fair market value. Neely v. Commissioner, supra at 950. This duty cannot be avoided by delegating the responsibility to an agent. Pritchett v. Commissioner, 63 T.C. 149, 174 (1974). Petitioners' accountant testified that in preparing the 1983 and 1984 Federal income tax returns he relied on values provided by petitioners. Petitioners did not testify, nor did they introduce any evidence to demonstrate, that they made any investigation whatsoever to ascertain the value of their charitable contributions prior to filing their 1983 and 1984 returns, even though the value of the property had previously been the subject of an examination by respondent. While the amendment to their 1984 return was based on an appraisal, the appraisal was as of November 5, 1986, and thus does not represent due care on the part of petitioners. We find that the entire underpayments for taxable year 1983 *70 and 1984 were due to negligence. Accordingly, respondent's determination with respect to the additions to tax under sections 6653(a)(1) and 6653(a)(2) is upheld. Substantial Understatement of Income Tax
Section 6661 provides that where there is a substantial understatement of income tax for any taxable year, there is added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. There is a substantial understatement under section 6661(b)(1)(A) if the amount of tax required to be shown on the return exceeds the amount of tax which is actually shown on the return by the greater of 10 percent of the tax required to be shown, or $ 5,000. The addition to tax imposed by section 6661(a) may be reduced only if petitioners show that their position was supported by substantial authority or that they disclosed facts relevant to their position on their return. Sec. 6661(b)(2)(B). The numerical requirements of section 6661(b)(1)(A) are satisfied for taxable years 1983 and 1984. Petitioners have failed to show any substantial authority *71 to support their position. In addition, petitioners failed to show that they disclosed on their returns any relevant facts supporting their valuations of the claimed charitable contributions. Hence, the reduction allowed by section 6661(b)(2)(B) is not available to petitioners. We therefore uphold respondent's determination of the additions to tax under section 6661. In light of the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩